## Falvey Chancey v. The State.

### No. 4019.   Decided June 9, 1909.

### Rehearing denied January 26, 1910.

**1.—Robbery—Indictment—Statutes Construed.**

An indictment, in a prosecution for robbery, which alleged that the property was taken by assault and violence and by putting in fear of life or bodily injury, with a fraudulent intent and without the consent of the owner, to deprive the owner of the value of and to appropriate it to the use and benefit of the defendant, was sufficient, without alleging that it was against the will of the party injured.

**2.—Same—Continuance—Second Application.**

Upon trial for robbery, where the defendant alleged that he made his first or second application for a continuance, the same must be taken as a second application.

**3.—Same—Continuance—Immateriality of Testimony.**

Where, upon trial for robbery, it appeared that another had been indicted for the same offense and acquitted, and the defendant made application for a continuance for the testimony of his said codefendant, but it appeared from his application that the testimony of said codefendant was wholly immaterial, and that it did not conflict with the State's testimony, there was no error in overruling the same.

**4.—Same—Evidence—Opinion of Witness.**

Where, upon trial for robbery, the rejected testimony offered by the defense was simply an opinion of the witness, there was no error.

**5.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of robbery, the bill of exceptions failed to disclose the character and purpose of the rejected testimony, the same could not be considered.

**6.—Same—Argument of Counsel—Practice on Appeal.**

Where, upon appeal from a conviction of robbery, it did not appear how the argument of State's counsel could have prejudiced the rights of the defendant, there was no error.

**7.—Same—Charge of Court—Principals.**

Where, upon trial for robbery, the court's charge, in submitting the law of principals, covered the case as made by the testimony, and was as favorable to the defendant as the facts would authorize, there was no error.

**8.—Same—Bill of Exceptions—Practice on Appeal.**

Where, upon appeal from a conviction of robbery, there was no bill of exceptions to the alleged introduction of testimony with reference to other offenses, the same could not be considered.

**9.—Same—Sufficiency of the Evidence.**

Where, upon trial for robbery, the evidence sustained the conviction, the same will not be disturbed.

Appeal from the District Court of Angelina.   Tried below before the Hon. James I. Perkins.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*E. J. Mantooth* and *Johnson & Edwards,* for appellant.—We believe that inasmuch as the State was allowed to prosecute this case upon the proof, by Harris, that McDonald and Chancey were the men that robbed Harris, and the State's attorney was permitted to take that same position and argue that theory to the jury, that it was the constitutional right of the defendant to be heard upon that theory of the case by the testimony of the only other witness that was present at any portion of the history of this case, whose testimony was most probably true, because, as stated before, the jury believed it to be true, and we confidently believe that the jury would have acquitted the defendant in this case, if he could have had the benefit of McDonald's testimony. McAdams v. State, 24 Texas Crim. App., 86; Cordway v. State, 25 Texas Crim. App., 405; Mitchell v. State, 36 Texas Crim. Rep., 278; Bird v. State, 48 Texas Crim. Rep., 188, 87 S. W. Rep., 146; Phipps v. State, 34 Texas Crim. Rep., 608, 31 S. W. Rep., 657.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is an appeal from a conviction for robbery. The indictment charges robbery by assault and violence and follows the language of the statute, article 856, White's Annotated Penal Code. Appellant made a motion in the court below to quash the indictment because it omitted to charge that the property was taken against the will of said Harris. It is true that the form of indictment for robbery by assault as laid down in section 1494, White's Penal Code, uses the term against the will of the party robbed. However, we are of opinion that this allegation is unnecessary. The language of the article above quoted is as follows: "If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use he shall be punished," etc. Now, the indictment alleges that the property was taken by assault and violence and by putting in fear of life or bodily injury, with the fraudulent intent and without the consent of the owner to deprive the owner of the value of and to appropriate it to the use and benefit of the appellant. We think to use the words "against the will" of the party would be surplusage where the indictment alleges that the property was acquired by assault and violence. We therefore hold that the bill of indictment is a valid indictment, and that it is not necessary to allege that the property was acquired against the will of the party.

On the trial of the case before announcement of ready on the part of appellant, he made an application for a continuance which was by the court overruled. Appellant reserved a bill of exceptions to this action of the court and the motion is now before us to be considered on this appeal. The bill of indictment in this case was returned in

the District Court of Angelina County on May 5, 1905. The defendant was not brought to trial until the October term, 1907. We are not advised by anything in the record as to whether this was appellant's first or second application for a continuance. He says in his application that he makes this his first or second application for a continuance as may be determined by the court. In the state of the record we can not hold that this was the first application for a continuance. However, whether it is the first or second application, we do not think the testimony of the witness McDonald, for whose testimony the application is sought, was in any way material to the appellant in the trial of the case. Without reference to the diligence the appellant asked for a continuance to secure the testimony of the witness J. C. McDonald, by whom he expected to prove that the said McDonald will testify that he had been indicted for this identical robbery and had been acquitted; that he would swear that he was not present at the time that John Harris, the party alleged to have been assaulted, was robbed; that he did not see or knew that a robbery had been committed or that one was going to be committed; that he did not discuss the question of robbing said Harris before or after the robbery with the defendant; that he had no connection with said robbery whatever; that if said defendant robbed, or assisted in robbing, the said John Harris, the said witness knew nothing about it. Appellant further in said motion set out the testimony of the said McDonald as given by him in the trial of himself for said robbery, and he claims that this testimony was material to his defense. Without setting out the testimony as disclosed by the said motion, it will only be sufficient to state that the said McDonald on his trial testified that on the night of March 15, 1905, he was afoot going out of the town of Lufkin to a sawmill situated some mile and a half or two miles north of Lufkin; that after he had crossed the Cotton Belt Railroad close to some box cars standing on the side track, he heard someone groaning and he walked out to where he located the noise and saw a man lying on the ground, who afterwards turned out to be the John Harris who claimed to have been robbed. That he assisted the said Harris to get up and supported him as he walked to his camp; that when the said Harris first came to himself the said Harris told him, McDonald, that he had been run over and knocked down by a car and that another man who was with him had been killed. McDonald further testified that after he had carried Harris to his camp, which was located but a short distance, the said John Harris immediately took hold of McDonald, called to his wife to bring his pistol and accused the said McDonald of assisting in robbing him. The said McDonald further testified that he did not know that the said Harris had been robbed until this accusation had been made against him when they got to his camp; that he was not with the party that robbed the said Harris, knew nothing about it; did not know whether Falvey, the appellant,

or anyone else had robbed him; had had no talk with Falvey on that night before or after the robbery; had not been in company with the said Harris or the said Falvey before the robbery and knew nothing about it. On the trial of the case the witness Harris testified that he was in the town of Lufkin on that night; that he had arrived in the town a few days before that, was camped out some five or six hundred yards north of the business portion of the town; that he was a horse trader and had mules for sale; that he had gone down in town after supper to see a man by the name of Simms to sell him a mule; that he got in company with the appellant, who was running a livery stable or barn, and that the appellant told him that he would perhaps buy a horse or two, or a mule from him. He remained in company with the appellant until about one o'clock; that he went into several saloons with the said Falvey and took some drinks. While walking around they passed by a boy playing some kind of a musical instrument, when appellant remarked that that boy was a dangerous character and that he was afraid of him. When John Harris started to his camp and spoke of going, appellant remarked that he lived in a little white house opposite to where Harris' camp was situated, and that he was afraid of that boy and that he would like to have Harris accompany him home. Shortly after this appellant and the said Harris started out toward his camp. Here, the witness Harris says: "We walked right on up to the Green Rock saloon, turned around the corner, right along the side of the Green Rock saloon until we come to the wagon crossing, and we crossed the railroad, and when we got to the last track or next to the last track we turned up the railroad along a string of cars, and as we got to the end of these cars, appellant remarked, 'Let's cross over and get in the path.' We crossed over the railroad, walked out about twenty feet from the end of the car, the appellant was on the left side of me, as we walked up there and as we walked out to the path appellant looked over his right shoulder and says: 'There he is now,' and as he did he laid his hand on my shoulder. I looked and didn't see nobody at the end of those cars, and when I turned that throwed my right side next to appellant, and I turned and looked, and when I did this I saw a man, and it looked as though he was just raising from the end of the car, and as he did I looked back at appellant to see what he was doing standing there. If he expected trouble or something. I supposed that he had made some preparation to protect himself, but he still stood there holding my shoulder; when I looked back this man advanced and was right on us with a stick or a piece of iron. I could not tell which; it looked like the big end of a broom handle and about sixteen or eighteen inches long, and instead of striking at Chancey, as I supposed he would, he struck at me, and I threw up my left hand and caught the lick between the shoulder and elbow, and as I did that, defendant grabbed me around the waist from the back and then this other man

struck again and struck me over the left shoulder, and the next lick he struck me over the right shoulder, and during all this time defendant and me were in a scuffle. I was trying to get my arm around his neck, and the next lick he struck me on top of the head, and defendant either threw me or the lick knocked me so that I fell, and as I fell Chancey fell with his knees—to the best of my recollection—his head was turned toward my feet and as he did that that man hit me a heavy blow right on the left side of the head and dazed me. As we fell it seems as though defendant fell with his knees on me. Just as we went on the ground I felt defendant's hands go in my pocket and that was all I remembered, just kind of dazed. Defendant put his hands in both of my pockets, turned both pockets wrong side outward; he got from me $85." This is a sufficient statement of the testimony of the immediate transaction. However, the witness further testified that when he was coming to himself he saw a man standing over him who afterwards turned out to be McDonald. The witness says he grabbed this man by the pants legs and said to him: "They run that car over us, didn't they?" and he says, "I don't know," and the witness remarked, "What became of the other man? did they kill him?" and he says, "I don't know; I didn't see no other man." Harris further testified that this man assisted him to camp, and after he got to his camp he accused this man of being one of the men that robbed him. He gave as a reason why he said to McDonald when he first came to him about the cars running over them, was because he thought McDonald was one of the men that robbed him, and that he made that remark to create the impression that he did not know what he was doing so that he would throw McDonald off of his guard. We have set out so much of the testimony in the record for the purpose of showing that in no view of the case could the testimony of McDonald be material. The application shows, as well as the proof on the trial of the case, that McDonald was not with Falvey that night, was not present when Harris was robbed, that is, the defendant proposed to prove that by McDonald, and the testimony of McDonald attached to the application for a continuance shows that. Hence, in no view of the case could the said McDonald's testimony have been material. But it may be said that this testimony was material to impeach Harris as to what he said to McDonald when he came to himself on the night in question. Harris, however, admitted that he made the statement to McDonald about the cars running over them, and in fact the testimony of McDonald, as set out in the application for a continuance, coincides with the testimony of Harris as to what took place after McDonald came to him while he was lying on the ground, and what was done and said after McDonald had assisted Harris to the camp. We therefore hold that the testimony was not material and that the court below did not err in overruling the application for a continuance.

The second bill of exceptions in the record discloses that when the witness Watts, who was sheriff of the county, and who had been placed upon the stand by the State in his examination in chief, testified that the witness Harris accused Falvey to his face of getting his money and said to the sheriff, "You need not search McDonald, Chancey has got my money." The appellant on cross-examination asked the witness Watts if defendant did not deny getting the money or robbing Harris. When the defendant then propounded to Watts the following question: "Q. Do you not know that it was material whether Chancey denied or did not deny it?" The State objected to this question and the court sustained the objection as it was simply the opinion of the witness as to whether it was material or not. We think that this was the opinion of the witness that was elicited on a question of law and was not an effort to elicit any fact in the case. If error, however, it would not be of sufficient importance to authorize a reversal of the case.

The third bill of exceptions we think is without merit. This was because the court excluded from the jury a conversation had by the witness Clayton with the defendant's attorney Mantooth. The exception fails to disclose what would have been the witness' testimony or for what purpose it was introduced. In the absence of what the answer of the witness would be, or the grounds of the objection to the testimony or the grounds upon which it is offered, this court can not revise the action of the court below.

The fourth bill of exceptions is to the action of the court in refusing to allow the defendant to offer in evidence the subpoenas and attachment for the witness McDonald and further to show by the witness Watts, sheriff of the county, that McDonald was present at a former term of court. For what purpose this testimony was offered before the jury we are not advised. If it was a question affecting the diligence of the defendant to secure the attendance of said witness, this was a matter addressed to the court on the application for a continuance and could not possibly have any bearing upon any issue before the jury.

The fifth bill of exceptions is to the language of the district attorney in arguing the case to the jury, in which the district attorney stated to the jury that there was no mistake about the fact that McDonald was the man that assisted appellant in robbing Harris. The defendant claims that this was highly prejudicial to his rights and prejudiced his case before the jury. We can not see how appellant was prejudiced thereby. That somebody run out from the car and struck Harris is proved beyond question. The appellant himself admitted that. Who this man was the record does not disclose. Appellant himself said he did not know who he was. Whether it was McDonald, or whatever name the imagination of the district attorney may have pictured,

would be wholly immaterial. We think there is no merit in this exception.

Counsel in his motion for a new trial complains of the charge of the court, wherein the court in the sixth paragraph of his charge directed the jury that all persons are principals who are guilty of acting together in the commission of an offense, and although the act which directly accomplished the crime was the act alone of some one of the parties, then the defendant would be guilty. Appellant claims that this charge is erroneous because the act was not the act of one party alone, but that the defendant and some other person, McDonald or someone, acted with him. We are of opinion that whether the defendant alone or in company with somebody else committed the offense he would be equally guilty, and we are not advised as to how this charge was injurious to appellant. The court instructed the jury as follows: "Now, keeping foregoing instructions in view, if you find from the evidence beyond a reasonable doubt that the defendant alone or acting as principal with another or others did, in Angelina County, State of Texas, on or about the 15th day of March, 1905, by assault or violence upon John Harris, fraudulently take from the person of said John Harris one or more twenty dollar bills, or any one or more of such bills of either of said denominations, and that the bill or bills so taken were money of the United States of America and of some value, and that said bill or bills so taken belonged to said John Harris and were so taken without his consent, and with the intent of defendant to deprive the owner of said bill or bills or the same and to appropriate said bill or bills so taken, in whole or in part, to his, defendant's, own use, you will find the defendant guilty of robbery and assess his punishment at confinement in the penitentiary for life or for any terms of years not less than five years. If you believe John Harris was robbed at the time and place and of the property as alleged in the indictment, but have a reasonable doubt of defendant's participation as a principal in such robbery, or if, upon the whole case, you have a reasonable doubt of the guilt of the defendant, you will find the defendant not guilty." We think, this charge covers the law of the case as made by the testimony and that the court's charge was as favorable to the defendant as the facts would authorize and we can not see how the appellant was prejudiced by the charge of the court.

The eighth ground of the motion for new trial complains that the court erred in limiting the purpose of the evidence offered by the State that the defendant had been by complaint charged with the offense of robbery in another case on the ground that said testimony was illegal and the charge should have excluded same. We do not find any bill of exceptions in the record to the introduction of this testimony. In the absence of a bill we can not consider the same.

The only remaining question is as to the sufficiency of the testimony.

While it is true that the defendant took the stand and denied any guilty participation in this crime, yet the testimony for the State points directly to him, most positively as one of the guilty parties. The jury who are, by the law, made the judges of both the credibility of the witnesses and the weight to be attached to their testimony, have passed upon the appellant's case. They have said he was guilty. We could not, without invading the province of the jury, hold otherwise. We can only pass upon the question as to whether he has had a trial according to the provisions of the law, and after a most careful review of all the questions raised we find no error that would authorize us to set aside the verdict in this case, and believing that defendant has had a fair and an impartial trial, we have nothing to do but to affirm the judgment, which is accordingly done.

*Affirmed.*

[Rehearing denied January 26, 1910.—Reporter.]
McCord, Judge, not sitting.