## THE STATE v. JOE MASSEY, Appellant.

### Division Two, June 3, 1918.

1. **INFORMATION: Clerical Errors.** Clerical misprision in the information, such as omitting the word "did" where it is plainly understood, or writing "make" for "made" or "State" for "statute," being such errors as the reader will readily detect and instantly correct, is saved by the Statute of Jeofails, which forbids the Supreme Court to hold invalid any defective indictment or information wherein the defect "does not tend to the prejudice of the substantial rights of the defendant upon the merits," and is not fatal error.

2. ———: **Defect Not Assigned.** It is the statutory duty of the appellate court to notice a fatal defect in an information, if obvious, although not called to the attention of the court in the brief of defendant's counsel.

3. ———: **Robbery: Omission of the Words "Against His Will."** An information attempting to charge the crime of robbery which fails substantially to allege that the taking of the property was against the will of the person robbed is palpably bad. The statute is declaratory of and defines robbery in the terms of the common law, which required such an allegation to be made in the indictment. But it is not absolutely prerequisite that the set and fixed phrase of the statute "against the will" be employed, if words of equivalent meaning and import are used.

4. ———: ———: ———: **Equivalent Words: By Force.** An information charging robbery which did not in words allege that the defendant took the property "against the will" of the person robbed but did allege that he took it "by force and violence to" said person, was not fatally defective, for the word "force" means "power exerted against will or consent."

5. **TESTIMONY OF ACCOMPLICE: Cautionary Instruction.** Where most of the material facts to which the accomplice testified were shown by other witnesses, it was not reversible error to refuse to give a cautionary instruction as to the weight to be given to his testimony. The rule is analogous to that relating to a conviction upon circumstantial evidence, which is: if all the evidence upon which a conviction is bottomed is circumstantial, it is error to refuse to give a cautionary instruction as to the manner of weighing such evidence; but if conviction is not sought on circumstantial evidence alone, it is not error to refuse to give the instruction. [Distinguishing State v. Woolard, 111 Mo. l. c. 256.]

6. **ROBBERY**: Instruction: Omission of Word Feloniously. In a robbery case, it is not necessary that the instruction require that the assault was "felonious" or that the taking of the property was "feloniously done." Especially is the omission of these words not error where the instruction requires the jury to find that the property was taken by defendant "with the intent at the time to wrongfully take and carry away and to convert the same fraudulently to his own use and to deprive the owner thereof permanently without his consent."

7. ———: ———: **No Evidence: Misdirection.** If there is no evidence, either that defendant assaulted the person robbed or that he took from him the property of which he was robbed, but there is positive evidence that it was done by others, it is error to tell the jury that they must find that both the assault and taking were done by defendant before they can convict him. But where the facts and circumstances in evidence make it a question whether defendant did actually assault the person robbed and did actually assist the two other persons present in robbing him, such an instruction is not error.

8. ———: ———: **Non-direction: Accessory: Not in Motion for New Trial.** But whether there was reversible non-direction, in that the court neglected to submit the question of whether defendant was an accessory to the assault and robbery, committed by the other robbers, or was present as a mere spectator, innocent of any unlawful intent to commit a crime, is not in the case, if no such complaint of non-direction is in the motion for a new trial. But, nevertheless, the form of an appropriate instruction to meet such a situation is set out in the opinion.

9. **IMPEACHMENT**: By State of Own Witness. The admission in evidence of an information, offered by the State, showing that a witness for the State had been charged with the same robbery, and the conviction of said accomplice, is not an error of which defendant can complain, since its tendency was to impeach the State's witness.

10. ———: **Records of Conviction: Offered by Both Sides.** The defendant cannot complain that the State offered in evidence the court records showing the indictment and conviction of one of its witnesses, if the defendant himself offered the same records.

11. ———: ———: **No Proper Objection.** The court record showing the conviction of a witness for the defendant of a crime may always be offered for purposes of impeachment. Besides, the objection to the record should properly specify the reasons for its incompetency.

12. ———: ———: **Offered Before Witness Testifies.** The admission in chief of proper rebuttal testimony, while irregular, is not rever-

sible error. The assignment that the State, prior to the time the defendant's witness testified, offered in evidence the court record showing that said witness had pleaded guilty to the identical robbery for which defendant is being tried, is without merit, though the irregularity is not commended.

13. ———: ———: ———: **Query.** Whether or not the admission in evidence of the plea of guilty and record of conviction of said witness, offered by the State, would have been reversible error, if said witness had not later been offered by defendant, is adverted to, but not decided, because said witness was offered by the defendant and testified.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

AFFIRMED.

*B. A. McKay* and *Ward & Reeves* for appellant.

(1) The information in this case does not charge that the defendant "made an assault" or "did make an assault" and the information is insufficient. Sec. 4530, R. S. 1909; State v. Calbert, 209 Mo. 280. (2) John Cidius was the main star witness for the State, not jointly indicted with the defendant, but under an indictment for the same offense, and the court, over defendant's objections, permitted the introduction of the information against Citius, the State's own witness, and this was prejudicial error to the defendant. State v. Reavis, 71 Mo. 419. (3) Over the defendant's objections and exceptions the State introduced the record showing the trial, the swearing of the jury, the names of the jurors, the verdict of the jury and conviction of one Willie Sharp of the same offense for which the defendant was being tried, and this was shown as a part of the State's case in chief, and Willie Sharp was not a witness for the State, had not taken the stand, but it had been shown in evidence that he was in company with the defendant and John Citius the night of the robbery. "Even where two persons are jointly indicted for a felony, the conviction of the principal is not a condition precedent to the conviction of the accessory,

or *vice versa.*'' State v. Anderson, 89 Mo. 312; State v. Phillip & Ross, 24 Mo. 483; State v. Reavis, 71 Mo. 419. ''The judgment of conviction of one jointly indicted or of an accomplice or principal is incompetent against the defendant at bar.'' People v. Bearss, 10 Cal. 68; State v. Crank, 23 Am. Dec. 117; Kelly's Criminal Law (3d Ed.), sec 47, pp. 46-47. (4) · Instruction 1 does not require the assault to be felonious or the taking of the property to be feloniously done; leaves it to the jury to find that the defendant took the gold watch and $10 in money, when the State proved that the watch was taken by Citius, and there was no testimony that the defendant took any of the property. Instruction 2 is erroneous, for the following reasons: (a) Because it refers to the information for the jury to find what property was taken, if any. State v. Wilcox, 179 S. W. 479, 1. c. 481 (Mo. Sup.). The information does not require the assault to have been felonious. The court erred in refusing to give a cautionary instruction on testimony of an accomplice. (5) It·is reversible error to refuse to instruct the jury that the testimony of those aiding and abetting and encouraging in a crime should be received with great caution by the jury, and they should not convict on such testimony unless satisfied of its truth. State v. Jones, 64 Mo. 391; State v. Woolard, 111 Mo. 256; State v. Harkens, 100 Mo. 672; State v. Chyo Cheagk, 92 Mo. 413.

*Frank W. McAllister* Attorney-General, and *Thos. J. Cole,* of counsel, for respondent.

(1) The information does not contain an allegation that the property was taken from E. P. Adkins ''against his will,'' but it is charged that the property was taken from Adkins, ''by force and violence to the person of said E. P. Adkins,'' and therefore the omission of the statutory phrase ''against his will,'' does not render the information insufficient. People v. Riley, 75 Cal. 98; State v. LaChall, 28 Utah, 83; State v. Patterson, 42 La. Ann. 934; State v. Presley, 91 Miss. 381; Acken v. Commonwealth, 94 Pa. 284; State v. Kegan, 62 Iowa,

106; State v. Wilson, 136 La. 345; Chauncey v. State 124 S. W. (Texas) 426; Anderson v. State, 28 Ind. 22; Terry v. State, 13 Ind. 70; State v. Parr, 103 Pac. (Oregon) 435. (2) The information is not insufficient because it states that defendant "make an assault" instead of "made an assault." Sec. 5115, R. S. 1909; State v Morehead, 195 S. W. (Mo.), 1043; State v. Griffin, 249 Mo. 627; State v. Duvenick, 237 Mo. 194. (3) Admission in chief of evidence which is proper in rebuttal is a mere irregularity ,and is not reversible error. Hays v. State, 40 Md. 649; Brister v. State, 26 Ala. 127; Lawson v. State, 20 Ala. 78; Nuckolls v. College of Physicians and Surgeons, 94 Pac. 81; Bliss v. Waterbury, 131 N. W. 732; Page and Jones v. Barry, 73 So. 22; Brownell v. Moorehead, 165 Pac. 410. (4) The trial court did not instruct the jury as to the value of accomplice testimony, although requested to do so by defendant's counsel. The failure to give such instruction is not reversible error. Diggs v. United States, 220 Fed. 552; Solander v. People, 2 Colo. 66; Cheatham v. State, 67 Miss. 344; State v. Haynie, 19 N. C. (2 Dev. & Bat.) 390; Commonwealth v. Clune, 162 Mass. 214; Johnson v. State, 2 Ind. 655; Commonwealth v. Wilson, 152 Mass. 14; State v. Porter, 42 Vt. 505.

FARIS, J.—On the 26th day of March, 1917, the prosecuting attorney of Pemiscot County filed in the circuit court of that county his duly verified information charging defendant herein with the crime of robbery in the first degree. Upon his trial defendant was found guilty and his punishment assessed at imprisonment in the Penitentiary for a term of five years. From the resulting sentence defendant has appealed.

The facts shown in evidence tend to prove that defendant, together with John Citius, Willie Sharp and an unknown man decoyed one E. P. Adkins (who had been drinking and was at the time under the influence of liquor, if not actually drunk) out of a saloon in the town of Caruthersville, and robbed him of a watch, watch-

chain, and some money, aggregating in value, as it averred in the information, the sum of $34.

Defendant was not jointly charged with Citius and Sharp in this robbery, but was separately indicted. Citius and Sharp, as the record discloses, were jointly indicted for the robbery of Adkins. Sharp had, it seems, theretofore been tried and convicted, and Citius had pleaded guilty, and upon the trial of defendant Citius testified for the State.

There was much other evidence, both direct and circumstantial, in the case, outside of that given by the accomplice Citius, but for ease of statement we shall refer in detail to his story of the circumstances of the robbery, as well as to his statement of the facts which led up thereto. Defendant, together with Sharp and Citius, and numerous others, were, as stated, in a saloon with Adkins. The latter was drunk. He had invited the usual aggregation of bystanders to join him in a drink, in paying for which he had exhibited some money. Thereupon defendant, according to the story of his accomplice Citius, said to the latter and to Sharp, that he, defendant, would entice Adkins out of the saloon, and take him down the street, and that Citius and Sharp could follow after them, catch up with them and the three of them would get Adkins's money. Upon the pretense of showing Adkins a rooming house, which defendant averred he owned, or was running, he took Adkins by the arm and led him out of the saloon. Almost instantly thereafter Citius and Sharp followed them out. After going with Adkins, holding the latter by the arm, for a distance of some two blocks or more, defendant released Adkins, and almost immediately thereafter Adkins was struck, knocked down, and for a moment seemingly rendered unconscious. While he was down, defendant, assisted by Citius, took from his person the property set out in the information.

Shortly afterward Adkins returned to the saloon and made complaint that he had been robbed. Defendant also came back into this saloon and was accused by Adkins of having assisted in the robbery. Upon the

trial of the case Adkins testified that while he was down someone was heard coming, and defendant suggested that the approaching party be held up with a pistol, and that immediately after his property was taken defendant ran off.

Defendant testifying for himself denied any participation whatever in this robbery, but swore that Sharp and Citius committed the robbery without any assistance from him or from anyone else. He swore that he thought Sharp struck Adkins, and that Sharp then drew a gun and ordered him (defendant) to "stay out of it." One witness for defendant testified that he was with defendant on the night of the robbery and that defendant had no conversation whatever with either Citius or Sharp. The latter, however, testifying for defendant, admits having a conversation with the defendant a short time before the robbery, but denies that this conversation had anything to do with the robbery. The reputation of the defendant, as well as that of many of the witnesses, was shown to be bad.

Such further facts as tend to make clear the points we find ourselves compelled to discuss will be set forth in the opinion in connection with that discussion.

I. Defendant complains that the information upon which he was tried and convicted is bad, for that it does not charge that an assault was made upon the prosecuting witness. Omitting merely formal parts, which are conventional, this information reads thus:

"Now comes C. E. Bragg, Prosecuting Attorney within and for the County of Pemiscot, who in this behalf prosecutes for and in the name of the State of

Information. Missouri, and upon his official oath informs the court that on or about the ——day of March, 1917, at and within the county and State aforesaid, one Joe Massey, in and upon E. P. Adkins, unlawfully and feloniously *make an assault* and one gold watch of the value of twenty dollars, one gold watch-chain of the value of three dollars, one pocket knife of the value of one dollar and ten dollars of good and lawful money

of the United States, and of the aggregate value, thirty-four dollars, the property of E. P. Adkins, then and there from the person of and *by force* and violence to the said Adkins, feloniously did rob, steal, take and carry away, contrary to the form of the *State* in such cases *make* and provided, and against the peace and dignity of the State of Missouri.''

It is plain that the pleader by a mere clerical misprision, either omitted the word ''did'' before the phrase ''make an assault,'' or he wrote ''make'' where he intended to write ''made.'' In either event the error is one which the reader of the information readily detects and is readily and instantly able to supply. Such condition being obvious we do not think we ought to condemn the information as being fatally bad. We think it is saved by the Statute of Jeofails which forbids us to hold invalid any defective indictment or information wherein the defect extant ''does not tend to the prejudice of the substantial rights of the defendant upon the merits.'' [Sec. 5115, R. S. 1909; State v. Duvenick, 237 Mo. l. c. 194; State v. West, 202 Mo. 128; State v. Griffin, 249 Mo. l. c. 627; State v. Morehead, 195 S. W. 1043.]. It follows that this specific contention of fatal badness, must be overruled. Obviously, the patent clerical errors in the *contra formam statuti* clause of the information are likewise cured by the Statute of Jeofails, supra.

This information is, however, subject to another serious criticism, not called to our attention in the brief of defendant's learned counsel, but one which, being obvious, we think we should notice, and one which, if the defect prove to be fatal, it is our statutory duty to notice. This criticism is bottomed upon the novel departure in criminal pleading which led the learned prosecuting attorney to omit to charge in the set phrase and language of both the statute and the common law, that the taking of the property of the prosecuting witness from the person of the latter was ''against his will.'' The common law required such an allegation to be made in the indictment, and our own

Against Will.

statute, which is declaratory of the common law and which defines robbery in the terms of the common law (State v. Broderick, 59 Mo. 310), likewise contains this language. Any information attempting to charge the crime of robbery which fails substantially to allege that the taking of the property was against the will of the person robbed would be palpably bad. For obviously no person can be robbed, when he consents to or acquiesces in the taking of his property. There must be apt words in the information which negative the idea of consent, or acquiescence. Unless the information before us contain such, it is bad and cannot be upheld. For the pertinent language of our statute is: ''Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person or by putting him in fear of some immediate injury to his person; . . . shall be adjudged guilty of robbery in the first degree.'' [Sec. 4530, R. S. 1909.]. The information in the case charges, it will be noted, that the property was taken from the person of E. P. Adkins, ''by force and violence to the said Adkins.'' The statute does not contain the word ''force'' which we find used in the information, but does contain the word ''violence.'' The noun ''force'' means ''power exerted against will or consent.'' [Webster's Dictionary.] So, if the property was taken from the prosecuting witness by force, of necessity it was taken by the exercise of power, operating against the will of him who was robbed. It could not have been taken by force without being taken against the will of the prosecuting witness. While it is held, both at common law and under statutes defining robbery, with a uniformity which is almost universal, that the indictment must charge that the taking of the property is ''against the will'' of the person robbed, the cases hold and the text-books likewise lay down the rule that it is not an absolute prerequisite that the set and fixed phrase of the statute or of the common law be used to negative the fact of consent; that any other word or words which clearly allege that the caption of

the property taken was had without the consent of the person robbed, is sufficient. [People v. Riley, 75 Cal. 98; State v. LaChall, 28 Utah, 80; State v. Patterson, 42 La. Ann. 934; State v. Presley, 91 Miss. 377; Acker v. Com., 94 Pa. 284; State v. Kegan, 62 Iowa, 106; State v. Wilson, 136 La. 345; Chancey v. State, 124 S. W. 426; Anderson v. State, 28 Ind. 22; State v. Parr, 103 Pac. (Ore.) 434; 2 Bishop Crim. Proc. 1006; 34 Cyc. 1805.] While the information is not in a form to be either followed or commended, we are constrained to hold that it is not fatally defective.

II.   It is also urged that the learned trial court erred in refusing to give the usual cautionary instruction on the weight to be given by the jury to the testimony of one Citius, an alleged accomplice, who testified for the State.   The only case in this State, which either the diligence of learned counsel for defendant or our own researches have found for us, and which holds that such failure is reversible error, is the case of State v. Woolard, 111 Mo. l. c. 256.   In the above case, at the page cited, Judge GANTT, said:

Cautionary Instruction.

"The court clearly erred in refusing defendant's fourth instruction.   While a jury may convict upon the uncorroborated testimony of an accomplice, it is clearly the duty of the court to caution them in regard to such testimony.   The impeachment of the witness, Alf. Brown, in this case, was so overwhelming, in addition to his being an accomplice, it was peculiarly incumbent on the trial court to caution the jury in regard to convicting the defendant, for so grave an offense, upon his uncorroborated evidence."

From this excerpt facts appear, we think, which distinguish the Woolard case from the instant one. There the accomplice had been "overwhelmingly impeached."   Moreover, the case was one wherein the conviction could not have been obtained, absent the testimony of the accomplice, that is, but for this testimony the State could not have gotten the case to the

jury. Here, in the instant case, practically every fact to which the witness Citius testified was shown by other witnesses in the case, save and except as to what was said by defendant to his alleged 'accomplices in a whispered conversation in which others saw defendant and these accomplices engaged, just prior to defendant's inveigling the prosecuting witness out of the saloon to the place where he was robbed. The prosecuting witness testified to facts which, if believed by the jury, showed that defendant aided and assisted in this robbery. In short, in this case the testimony of the accomplice is merely cumulative; for the direct and circumstantial evidence adduced in corroboration thereof was in our view sufficient within itself to take the case to the jury. So, however much fairer it might have been to have given this instruction as prayed, we do not think *upon the facts before us* that we ought to hold the failure to give the cautionary instruction to be reversible error. In taking this view we acquiesce in the rule stated in the Woolard case, but distinguish that case from the case at bar upon the respective facts.

In a case wherein so large a part of the testimony upon which the conviction is bottomed comes from an accomplice, as that without such testimony the conviction could by no means be upheld, it might well constitute reversible error to refuse to give such cautionary instruction. But that is not this case. The rule we here adhere to is in all respects similar to the rule many times announced by us in the *precisely analogous* case of a conviction upon circumstantial evidence. In such a case, if all of the evidence upon which a conviction is bottomed is circumstantial, it is error to refuse to give the jury a cautionary instruction as to the manner of weighing such evidence. [State v. Donnelly, 130 Mo. 1. c. 649.] But if a conviction is not sought on circumstantial evidence *alone,* it is not error to refuse to give the cautionary instruction as to the manner in which such evidence should be weighed. [State v. Bobbitt, 215 Mo. 10; State v. Crone, 209 Mo. 316; State v. Donnelly, 130 Mo. 642; State v. Robinson, 117 Mo. 1. c.

663; State v. Moxley, 102 Mo. 374.]. We think there can be no doubt as to the precise analogy existing between the two propositions, and that a similar rule should prevail. For these reasons we are constrained to hold that the contention should be disallowed.

III. It is further contended that the court failed to require the jury, in and by instruction one given *sua sponte*, to find that the assault was felonious and that the taking of the property was felonious-

Feloniously. ly done. This instruction does require the jury to find that the property was taken by defendant "with the intent at the time to wrongfully take and carry away and to convert the same fraudulently to his own use and deprive the owner thereof permanently without his consent." Moreover, we said in the case of State v. Rader, 262 Mo. l. c. 133, after a careful examination of this whole question, this:

"Even in prosecutions for robbery in the first degree, on all-fours by analogy both in the respect that a larceny is committed ordinarily and that the statutes defining it likewise use the word 'feloniously,' we find no such invariable rule. On the contrary, the general rule is in robbery as in ordinary cases, that feloniously need not be used in the instruction, or if used that it need not be defined. [State v. Woodward, supra; State v. Cantlin, supra; State v. Rowland, supra.]."

IV. But touching this instruction, it is further and most seriously contended that in the very face of the evidence that both the assault upon the prosecuting witness and the taking of his property from

No Evidence: his person were done and committed by
Misdirection:
Non-direction. persons other than defendant, this instruction yet unequivocally tells the jury that they must find that such assault and such taking of the property were actually done by defendant himself before they can find him guilty. This contention is borne out by the instruction which plainly so charges. The instructions in a criminal case must be bottomed upon

the facts shown by the evidence adduced therein. If there were no proof, either that defendant assaulted the prosecuting witness, or that he took from the latter's person any of the property of which such witness was robbed, then this contention must be sustained and the case reversed. [State v. Johnson, 111 Mo. 578.] But the evidence of Adkins is that very shortly before he was struck and knocked down, the defendant, who had theretofore had hold of his arm, turned him loose, and that he was struck from the side on which defendant was walking. Adkins does not say, or seem to know who struck him; nor does any other witness in the case; the testimony of Citius is that defendant assisted in going through the pockets of Adkins, but there is no specific or definite proof as to which one of these parties actually found in Adkins's pockets and stole the several articles which the proof shows were taken therefrom. These facts and circumstances made it a question for the jury whether the defendant did not actually assault Adkins and actively assist in robbing him, and the learned trial court was upon the facts fully warranted in submitting this theory to the triers of fact, and there was no reversible mis-direction in the case. Whether there was reversible non-direction, in that the court neglected to submit to the jury the question whether defendant was merely an accessory to an assault and robbery committed, as to all the physical facts, by others whom he was merely aiding and abetting, is not in the case, because defendant does not complain of any such non-direction in his motion for a new trial.

It may well be that the facts proven called for the giving of instructions running substantially thus:

"If, upon a consideration of all of the facts in the case in the light of the instructions given you by the court, you find and believe that on or about the——day of March, 1917, at the County of Pemiscot and State of Missouri, John Citius, Willie Sharp, and an unknown man, or either of them, did make an assault upon one E. P. Adkins, and that said John Citius, Willie Sharp, and said unknown man, or either of them did by

violence to his person and against his will take from the person of him, the said Adkins, one gold watch, one gold watch-chain, one pocket knife and ten dollars in lawful money of the United States, or any part of said above-named articles, with the intent at the time wrongfully to take and carry away and fraudulently to convert said articles or any of them to their own use and to deprive the owner thereof permanently without his consent, and that said articles were the property of said E. P. Adkins, and were of any value, and if (having found the above facts), you further find and believe that defendant was then and there present aiding, abetting and encouraging in any way, or by any means, the commission of such assault and larceny (if any), you should find the defendant guilty of robbery in the first degree, as he stands charged; otherwise, you should acquit the defendant.

"The court instructs the jury that every person who is present at the commission of a felony, aiding, abetting, assisting or encouraging the same, by words, gestures, looks or signs, is in law deemed an aider and abettor, and is liable as a principal. But on the other hand, mere presence at the commision of a felony, or other wrongful act, does not of itself render a person liable as a participator therein; if he is only a spectator, innocent of any unlawful intent touching such felony, and does not aid, abet, assist or encourage those who are actors therein, he is not liable as a principal or otherwise." [State v. Cantlin, 118 Mo. 100.]

But, as this point is not raised in a manner calling for review, we are not called on to consider it.

V. It is strenuously urged that it was error to permit the State to offer in evidence the information which had been filed against John Citius, who is designated in the brief of defendant's learned counsel as the "star witness for the State," and that like error occurred in allowing the State to put in evidence the record of conviction of Willie Sharp, a witness for defendant, for his

*Impeachment: By Record of Conviction.*

participation in the robbery of the prosecuting witness. Both of these contentions are untenable. While it is difficult to see why the State desired to offer against its own witness the information which showed that he was charged with being an accomplice in the robbery of Adkins, it is yet impossible to see wherein defendant was hurt thereby. Its tendency was to impeach Citius, who was a witness for the State. Surely, defendant could not complain of this. Besides, defendant himself offered the record of the conviction of Citius. So, upon this ground, if for no other, he cannot be heard to complain.

Upon the other ground of complaint, that error occurred in permitting the State to show the record of the conviction of Willie Sharp, for this identical robbery, it is sufficient to say that the conviction of a witness of a crime may always be shown by the adverse side as a matter of impeachment. Here the plea of not guilty, the names of the trial panel and the verdict of the jury were all contained in a single record entry, which was offered as an entirety. If this record was incompetent, it was so for a reason not remotely mentioned in defendant's objection thereto, which objection was in substance merely that the record was not binding upon the defendant and that it had no tendency to prove either his guilt or innocence.

Neither is there any merit in the suggestion now made (which likewise was not urged in the original objection) that while impeachment testimony might have been competent after Sharp had testified as a witness, for defendant, it was not competent prior to the giving of such testimony. The admission in chief of proper rebuttal testimony while an irregularity and while the custom is not one which ought to be followed, should not be held to be reversible error. We have held that such an irregularity is not error meet for reversal (State v. Beedle, 180 S. W. 888), and such a rule seems to have met with approval in other jurisdictions. [Hays v. State, 40 Md. 633; Brister v. State, 26 Ala. 107; Nuckolls v. College, etc., 94 Pac. 81; Bliss v. Waterbury,

131 N. W. 731; Brownell v. Moorehead, 165 Pac. 408.] Obviously, to characterize as reversible error the admission of proper and competent evidence merely because such evidence had gone to the triers of fact a day, or an hour, or even a minute before it should have gone to them in the orderly progression of the trial, would be to adhere to an extreme refinement of technicality, wholly out of keeping with the modern tendency to achieve justice, through, over and across such refinements. Therefore, we are constrained to disallow this contention. If Sharp had not been offered as a witness by defendant and thus became liable to impeachment as a witness, by the State, the offering of the record of his conviction might have been error. There is some authority in other jurisdictions for this view. [People v. Bearss, 10 Cal. 68.] But the latter point is not in the case. We will pass on it in this jurisdiction when we reach it.

If the jury saw fit to believe the witnesses, and the result indicates somewhat conclusively that they did, the evidence is ample to sustain the conviction.

No errors of sufficient moment to call for a reversal of the case being called to our attention, it must be affirmed. Let this be done. All concur.