THE STATE v. CHARLIE PFEIFFER, *Alias* CHARLES N. PETERS, Appellant.

Division One, March 4, 1919.

1. **INFORMATION: Misprision.** So obvious a clerical misprison as misspelling a word, such as "threusing" for "thrusting," even if the word be absolutely necessary to a sufficient information, will not vitiate the information.

2. **EVIDENCE: Conspiracy in Sodomy and Rape: Acts and Admissions of Co-conspirators.** A conspiracy to commit the criminal act of rape and sodomy being shown, the acts done or admissions made by any of the co-conspirators while the common enterprise was proceeding are admissible in evidence against any one of them. Evidence of prior rapes and sodomy committed by three other men on the same woman and the language they used are admissible against defendant who by his own words connects himself with them as a co-conspirator in the common enterprise.

3. ———: ———: **Credibility.** It is not the province of an appellate court to pass upon the credibility of the prosecutrix or the weight

State v. Pfeiffer.

of her testimony tending to prove that defendant prior to assaulting her used · certain words which connected him with a prior assault upon her by three others and made him a co-con-. spirator with them in the common enterprise; it is enough for said court that the evidence was substantial and was believed by the jury. And in this case it is persuasive that three different juries have believed her testimony.

4. INSTRUCTION: Comment on Evidence: In Appellant's Favor. A comment on the evidence in defendant's favor, in the instruction given for the State, for instance, if it softens and limits the probative effect the jury would have been warranted in giving to the facts detailed, is not error of which he can complain.

5. EVIDENCE: Sodomy: Consent. Consent is not an element of sodomy. The sodomitic act being conceded, it is wholly immaterial to a conviction whether prosecutrix did or did not consent.

6. ———: Consent: Sodomy Per Os: Possibility: Muscles of Jaw: Fear. The muscles of the jaw have no necessary connection with the crime of sodomy through the mouth as defined in the statute. It was not error to refuse to permit a physician, in the trial of defendant charged with sodomy *per os*, to testify whether or not it was possible for a man to •insert his private organ in · the mouth of an eighteen-year-old girl, weighing 150 pounds, in full control of the muscles of her jaws and mouth, without her consent. In order to make the question competent it is not only necessary to omit all reference to consent, but other facts having reference to the situation of prosecutrix and the fear which she testifies she suffered should be included.

7. INSTRUCTION: Sodomy: Accomplice. If there is no evidence that prosecutrix was an accomplice in defendant's crime of sodomy, no cautionary instruction on the theory that she was an accomplice should be given. The court is not required to instruct upon mere abstract questions of law.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

AFFIRMED.

*Courad Paeben* and *Chester H. Krum* for appellant.

(1)   Evidence of previous assaults to which the accused was not a party was erroneously admitted. The evidence seems to have been admitted on an assumed continuity of performance which the facts did not

justify. (a) The town-meeting nature of the antecedent assaults, whose consequence was visited upon the appellant by the admission, was in itself sufficient for the exclusion of the evidence. In other words, evidence should not be admitted which a court could not advise a jury to accept because of its incredibility. (b) The appellant having been charged with a completed offense, in which he, at least, was alleged to have participated, there was no room for the admission of evidence of transactions to which he was not a party and which occurred in his absence and without his knowledge. (2) A more prejudicial error could not have been committed than the admission of this evidence. State v. Hyde, 234 Mo. 200;. State v. Horton, 247 Mo. 666; State v. Teeter, 239 Mo. 485. (3) It was reversible error to exclude the evidence of Doctor A. C. Vickery, and as a corollary to the question involved in this testimony it was reversible error to refuse the instructions asked by appellant on the point that the prosecutrix might have been an accomplice. The questions and the instruction were asked upon the obvious theory that if the woman assented to the act she was an accomplice in the commission of the crime. The offense is one which presupposes participation by at least two persons.

*Frank W. McAllister,* Attorney-General, and *Henry B. Hunt,* Assistant Attorney-General, for respondent.

(1) Evidence as to the assaults committed in Benton Park and at Cherokee Brewery by Long, Gaussman and Katz was properly admitted, (a) as the crime committed by appellant was one part of this continuous transaction. This evidence was also admissible upon the theory (b) that appellant joined the parties above named before the conspiracy was ended, and by so doing, he adopted their acts and declarations. State v. Katz, 266 Mo. 503; State v. Pfeifer, 267 Mo. 28; United States v. Logan, 45 Fed. 889; State v. Crab, 121 Mo. 563; Com. v. Rogers, 181 Mass. 193; Owens v.

State, 16 Lea (Tenn.), 5; Stevens v. State, 42 Tex. Crim. 172; Baker v. State, 81 Wis. 1. c. 420; Blain v. State, 33 Tex. Crim. 1. c. 250; State v. Fields, 234 Mo. 615.; State v. Gatlin, 170 Mo. 354; State v. Melrose, 98 Mo. 590; State v. McGraw, 87 Mo. 161; State v. Duncan, 64 Mo. 262; State v. Minton, 116 Mo. 605; State v. Swain, 68 Mo. 605; State v. May, 142 Mo. 135; State v. Faulkner, 175 Mo. 546; State v. Walker, 98 Mo. 95; Hart v. Hicks, 129 Mo. 105. (2) The evidence of Dr. A. C. Vickery, was properly excluded, and the instruction offered by appellant, as to the prosecutrix being an accomplice, was properly refused by the court. State v. Katz, 266 Mo. 504; State v. Campbell, 210 Mo. 229; State v. Smith, 250 Mo. 372; State v. Jenkins, 178 S. W. 93. (a) Consent is no defense to the crime charged. 36 Cyc. 504; 25 Am. & Eng. Ency. Law (2 Ed.), 1146; State v. Katz, 266 Mo. 503. (b) Hypothetical question must be based on evidence. Rogers, Expert Testimony (2 Ed.), p. 66 and sec. 13, p. 33; Russ v. Railway, 112 Mo. 48; Root v. Railway, 195 Mo. 377; Meily v. Railway, 215 Mo. 593; State v. Brown, 181 Mo. 215.

FARIS, J.—Defendant was convicted of sodomy perpetrated, as it is averred, upon one Mary Emmenegger, and his punishment fixed by the jury at imprisonment in the penitentiary for a term of three years. This is the second appeal in this case (See State v. Pfeifer, 267 Mo. 23), and the third time the bestial facts in evidence have been before us. (See State v. Katz, 266 Mo. 498). No occasion therefore is seen to again recite the facts shown upon the trial, since so much of the facts as we omit here, but which are necessary to an understanding of all the points raised, will be found set forth in the case of State v. Katz, supra, and State v. Pfeifer, supra, wherein the student of the law or the pruriently curious may read them at length and *ad nauseam.*

I. It is first insisted that the information upon which defendant was convicted is fatally defective. We have already passed upon this identical objection in the case of State v. Katz, supra, wherein an information **Misprision.** similar in all substantial respects was held sufficient. There is, however, in the case at bar a patent typographical error whereby the word "thrusting" is spelled "threusing" in the information, but even if the use of this word were absolutely necessary to the sufficiency of the information instead of being surplusage (State v. Meyers, 99 Mo. 107) we would hesitate to stultify ourselves by holding that so obvious a clerical misprision would vitiate this information. [State v. Miller, 156 Mo. l. c. 84; State v. Estis, 70 Mo. l. c. 437; State v. Massey, 274 Mo. 578, 204 S. W. 541.] We disallow this contention.

II. Defendant's learned counsel also contend with much vigor that the trial court erred in permitting the State to show acts of rape and sodomy which were per- **Conspiracy.** petrated on prosecutrix by Katz and two others before defendant is alleged to have appeared upon the scene, or committed the offense of which he was convicted. Counsel argue with much force and ability that under no possible theory could there have been a criminal conspiracy (in which defendant had part) to do the acts proven to have been done by Katz and his associates in crime. In other words, while grudgingly conceding the rule that once a conspiracy to do a criminal act is shown each co-conspirator becomes liable to have proved against him upon his trial every act and admission done or made by any other co-conspirator which are *res gestae,* that is to say, which are done or said while the common enterprise is proceeding, counsel yet insist that rape and sodomy are in their nature such crimes as preclude any possible application of this general rule to them. So, it is urged there was error here in admitting against the defendant, evidence of the prior rapes and sodomies, language and

acts of Katz and his criminal associates. The question is a close and difficult one, but after a laborious and careful examination of the ruled cases and the text-books, we are constrained to overrule it.

Let us briefly look at the facts: Katz and his associates took the prosecutrix from the young man in whose company she was at about eleven o'clock at night. In order to secure possession of her person they told her that they were detectives and that they were arresting her for some undisclosed offense. Thereafter they kept her in their custody continuously, each in turn committing acts of rape and sodomy upon her person *ad libitum*, till 3:30 o'clock in the morning, at which time the defendant came up to where the three were holding her in custody. The first words defendant said to prosecutrix, and so far as the record shows, the first words spoken by defendant to any one of this degraded gang were, "Well, girlie the same thing has to be done what was done to you before, what the other fellows done, I am head of these detectives, I am boss over them all." Immediately thereupon, continues the prosecutrix, "he threw me down and Katz and Gaussman and Long and him carried me back of the old Cherokee Brewery," where and whereupon the defendant committed the act for which he is here being prosecuted.

The admissibility of evidence of the prior crimes of Katz and his associates does not depend, as learned counsel for defendant somewhat flippantly argue, upon ratification, but upon the theory fairly to be deduced by the jury from the language of defendant himself, that there was a conspiracy between the defendant, and Katz and his miserable gang to get possession of prosecutrix and hold her till defendant could appear and likewise have his will of her. Under the testimony of prosecutrix as to the initial statements of defendant, which seemingly corroborated the lie by which Katz and his gang got possession of her person, the latter were aiders and abettors and therefore accomplices of defendant in the sodomy he perpetrated on her. The jury had the

right to consider and to find, if they saw fit, whether the language of defendant did not fairly mean that in *arresting* prosecutrix and retaining her in custody till defendant came, they were acting under his orders. If they were, defendant was as to the acts of Katz and his associates, an accomplice and a co-conspirator with them, and whatever was done or said by them after the caption of prosecutrix and pending her detention could be shown against defendant upon his trial.

The situation presented is we think wholly different from that which is so ably urged upon us by the insistence of defendant's counsel. If A and B mutually conspire to rob all of the houses in a given block, A taking one-half and B the other moiety, and they proceed singly and alone thereafter, there is not lacking authority that B's acts in robbing a given house may not be shown against A when the latter is on trial for another but wholly different robbery in the category. [4 Chamberlayne on Mod. Law of Ev. 3244.] Or, if F be on trial for perjury, for that he had falsely, etc., sworn that he did not know of the existence or purpose of a certain fund held in *escrow* for the purpose of a specific bribery, other acts of an alleged combine, or of co-conspirators, tending to prove separate and *distinct briberies by other persons for other purposes* cannot be shown against him. [State v. Faulkner, 175 Mo. 546.] Or, if (and we take this illustration bodily from defendant's brief) ''A is brutally assaulted on two occasions by B, C and D; E is not present, but some hours afterwards, together with B, C and D, assaults A and is prosecuted therefor,'' A will not be permitted to give the details of the previous assaults and of offenses to which E was not a party and of which he had no knowledge. But, it is defendant's misfortune that neither of the above illustrative cases at all presents the situation confronting us. If, in the first case, B while robbing house number one had kept a lookout for A while the latter was robbing house number two, B would thereby become an accomplice in the latter

robbery and his concurrent. acts constituting the *res gestae* could, the conspiracy being proven, be shown against A.   Or, if in the supposed case of defendant's brief, A had been captured by B, C and D, and held by them till E could appear and assault him, and if E, appearing had stated in effect that the object of A's capture and detention was to enable E to assault him, obviously the case would be different. [State v. Fields, 234 Mo. 615; State v. Faulkner, supra; State v. Gatlin, 170 Mo. 354; Hart v. Hicks, 129 Mo. 105; State v. May, 142 Mo. 135; State v. Hyde, 234 Mo. 224; State v. Weisman, 238 Mo. 555; State v. Minton, 116 Mo. 605; State v. Melrose, 98 Mo. 594; State v. Walker, 98 Mo. 95; State v. McGraw, 87 Mo. 161; State v. Greenwade, 78 Mo. 268; State v. Crab, 121 Mo. 554; Stevens v. State, 42 Tex. Crim. 172; Blain v. State, 33 Tex. Crim. 250.]   It is obvious that defendant's counsel, in their illustration, omit a salient and determinative fact, which the record before us discloses. In the instant case the language of the defendant when he came up to prosecutrix presently in the clutches of Katz and his bestial bunch could well have been construed as tending to prove that prosecutrix had been arrested and was being held for defendant's sexual delectation. If this was a fact (and it was for the jury to so find if they saw fit), the acts and admissions of these persons were admissible against defendant on the theory of a conpiracy.   We think this contention ought to be disallowed. [State v. Fields, 234 Mo. 615, and cases cited, supra.]

While it is urged that prosecutrix ought not to be believed, and that her statement as to this conversation, as well as the whole of her testimony, is incredible and therefore false, this question is not one to be re-

**Credibility.** solved by us. It was peculiarly the province of the jury to pass upon prosecutrix' credibility, and it is persuasive that three different juries have seen fit to believe her testimony. [State v.

277 Mo.—14

Katz, 266 Mo. 498; State v. Pfeifer, 267 Mo. 23.] In any event it is not among our privileges as an appellate court to pass upon the weight of it. Upon the question of the sufficiency of the evidence upon this point and others germane we said in the Katz case supra, this:

"It is finally insisted that the evidence upon which this conviction rests is 'so incredible, improbable and contradictory, and so opposed to all human experience' that the verdict should not be permitted to stand. As said by this court in State v. Sechrist, 226 Mo. 1. c. 582, 'That the transcript presents a state of degradation that challenges credulity must be conceded, and yet our statutes on incest and rape attest that these crimes are within the experience of our courts and Legislatures.' If the facts testified to by the prosecutrix are true, and in many respects she is corroborated by the testimony of disinterested persons, it cannot be said that the evidence is insufficient. The lawful triers of this issue have certified to us the truthfulness of her statements, and their verdict assessing punishment at only two and one-half years' imprisonment, instead of showing passion and prejudice, evinces that mercy has tempered justice." [State v. Katz, 266 Mo. 1. c. 504.]

III. Which brings us to the consideration of error urged, for that the court instructed the jury thus:

"You are further instructed that the testimony admitted at the trial with reference to what transpired at Benton Park and at the Old Cherokee Brewery,

**Instruction.** between the prosecuting witness and the persons referred to in the evidence as Long, Katz and Gaussman, before defendant's arrival at said last named place, if you believe and find from the evidence he did come there, should not be considered by you except insofar as such testimony, together with all of the other evidence in the case, tends to show the guilt or innocence of the defendant of the crime charged in the information and for which he is on trial. And even

though you may find and believe that such acts referred to in the testimony as having taken place at Benton Park and at the Old Cherokee Brewery between the said Katz, Long and Gaussman and the prosecuting witness actually did take place, yet if from the evidence and circumstances in this case you have a reasonable doubt as to whether or not the defendant actually committed the crime charged against him and for which he is now on trial, you must return a verdict of not guilty.''

In the light of the view which we have felt impelled to take of the admissibility, as against defendant, of the prior acts of Katz and his associates, we do not think there was any error of which defendant may complain in the giving of this instruction. Indeed, if this testimony was admissible, as under the peculiar facts here we rule it was, the above instruction was more favorable to defendant than otherwise. [State v. Bayne, 88 Mo. l. c. 611; State v. Weisman, 238 Mo. l. c. 556.] If it was a comment upon the evidence, as counsel for defendant insist, that comment ran in defendant's favor rather than against him. For to an extent it limited and softened the probative weight which otherwise the triers of fact might have felt warranted in attaching to it. In the case of State v. Weisman, supra, this court refused to reverse for that an instruction was given similar in substance to the one here complained of. We think this contention is likewise untenable.

IV. In the course of the trial Dr. Vickery, a physician, connected at the time of the alleged offense with the medical staff of the City Dispensary, was called by the State to testify as to the physical condition of prosecutrix immediately subsequent to the assault. In cross-examination the defendant asked him this question:

**Evidence.**

''Doctor, assume that a female 18 years of age, weighing about 150 pounds, in good health, with full

control of the muscles of her jaws and mouth, and assuming further that her articulation was good, and that she was possessed of all her teeth, in your opinion, Doctor, if, under those assumed facts, a female was to close her mouth and exercise those muscles, those masseter muscles, would it be possible for a male to insert his organ in her mouth without her consent.''

The learned trial court sustained the State's objection to the above question and defendant contends that this ruling was error. We are of the view that this contention is not tenable. Consent is no element of sodomy [36 Cyc. 504; State v. Katz, 266 Mo. 503]; for conceding a sodomitic act it is wholly immaterial to a conviction whether the pathic does or does not consent. Neither, as is fairly obvious, do the masseter, or great muscles of the jaw [Webster's Dict.] have anything to do necessarily with the crime of sodomy perpetrated *per os* pursuant to statutory amendment. The proposed hypothetical question was not then, for this and other obvious reasons, based upon the facts in evidence, as is by law required. [State v. Brown, 181 Mo. l. c. 215.] It should at least, among other facts not necessary to mention, have included some apt reference to the situation of the prosecutrix and the fear from which, she says, she was suffering while in the clutches of these libidinous lechers.

This point is germane to that bottomed upon the refusal of the court to give a cautionary instruction on the theory that prosecutrix was an accomplice. There was not a scintilla of proof in the case that prosecutrix was an accomplice. Had the court not refused, upon grounds we think were sufficient, to permit Dr. Vickery to answer the alleged hypothetical question, there might have been some basis for an instruction of the sort requested. But the latter point falls out of the case with the one next preceding. The trial court is not required to instruct upon mere abstract questions of law, upon which there is no evidence in the case. [State v. Katz, 266 Mo. l. c. 504.]

State ex rel. Jones v. Howe Scale Co.

Defendant's assault upon the whole case, bottomed upon what his learned counsel conceive to be the manifold and manifest contradictions, incongruities and incredibilities of the testimony of prosecutrix in the light of the situation, has been already answered in part. While prosecutrix' story staggers credulity, and while her testimony and her actions in some respects are well-nigh inexplicable upon any theory of human experience, three juries, we repeat, have seen fit to believe her. Her credibility was for the jury alone, and while the contents of this record may incline us to the view that in lecherous and libidinous indecency there is something new under the sun, and that the conclusion of the Psalmist to the contrary was either premature or exaggerated, we must yet leave to the jury the things which are the jury's and decline to interfere.

The defendant was not only well, but most ably defended. We have never before seen a record wherein every possible point looking to the safeguarding of defendant's liberty was more ably urged, contested and preserved. Finding no error meet for reversal, we are constrained to affirm it. Let it be so ordered.

All concur.