James Z. BRADLEY, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 56590.

Supreme Court of Missouri,
Division No. 2.

Jan. 10, 1972.

Motion for Rehearing or to Transfer to Court
En Banc Denied Feb. 22, 1972.

James Z. Bradley, pro se, and Austin C. Knetzger, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

In 1956 there were pending against James Z. Bradley two unrelated charges of first degree robbery and one charge of murder in the first degree. The murder charge arose from the fact that in holding up and robbing Peter Chip and his tavern at 1544 North Ninth Street, Bradley and Crews shot Patrolman Thomas Mulrooney who died nine days later. In brief the circumstances were that about six o'clock on the morning of March 16, 1956, Bradley and Crews, armed with a sawed-off shotgun, held up Peter Chip and his early morning patrons saying: "You big sonofabitch, I will give you ten seconds to give me that check money." The check-cashing money had not arrived and Peter told the robbers that the only money he had was in his pocket and he gave them $550.00. In the course of the holdup a .38 Colt pistol was taken and a patron was also robbed. Before they could get out one of the robbers said, "Here come two coppers." And as Mulrooney and Patrolman James Prost entered a side door there "was a blast of a gun" at close range and Mulrooney fell. As Bradley and Crews left several more shots were fired, Prost shooting at the fleeing robbers and they shooting and wounding him.

Beginning on November 28, 1956, Bradley was being tried for first degree murder by reason of Patrolman Mulrooney's death. The trial continued for five days before Honorable Michael J. Scott, three days in qualifying a jury for the death penalty and two days in presenting the state's thirty-two witnesses and fifty-four exhibits. Bradley's mother employed Mr. Raymond A. Bruntrager, a most competent and respected lawyer, then specializing in criminal cases, to defend the murder case. At the conclusion of five trial days and before the state had presented all its evidence, particularly all of its medical testimony, Bradley entered a plea of guilty to all three charges and in each case was sentenced to life imprisonment the sentences to run concurrently. In addition, it may be noted that during his imprisonment he has received three additional concurrent sentences of two years each, for, as he said "locking three guards up and going over the wall. I was charged with three assaults and escape." The latter sentences are not involved upon this appeal, in this 27.25–27.26, V.A.M.R., proceeding an attack is made upon the murder and robbery sentences only.

In connection with the appeal there are two subsidiary points: In one point the appellant attacks as void for failure to charge an offense the two robbery indictments in that in the language of the first degree robbery statute they did not charge that the gun and money were taken from Mr. Chip "against his will," RSMo 1969, § 560.120, V.A.M.S. This is not a new claim and it is not necessary that the subject be discussed extensively—it is sufficient to note that in 1918 in State v. Massey, 274 Mo. 578, 204 S.W. 541, and more recently in Hodges v. State, Mo., 462 S.W.2d 786, the question was thoroughly explored, particularly when there is an allegation of "force," and decided adversely to the appellant. 77 C.J.S. Robbery § 41, p. 478.

The other secondary point is an allegation that in this proceeding the court erred in refusing to honor his application for a writ of habeas corpus ad testificandum in which he sought to subpoena as witnesses Crews and Medley, both inmates of the penitentiary. The court, however, examined Bradley at length as to what these witnesses knew or would testify to and it turned out that they would say that when they were all confined in the St. Louis city jail they heard "jail officials" (jailers) say

that an example was to be made of Bradley and he "had better cop a plea if he could get it." Obviously, this jailhouse hearsay is not comparable to a court's refusal to call eyewitnesses while a trial is in progress as in State v. Blakeley, Mo., 438 S.W.2d 262. Here the court conducted an inquiry, the offer of proof refutes any possibility of materiality with respect to his pleas of guilty and the court did not err in refusing to subpoena Crews and Medley as witnesses. State v. Bagges, 350 Mo. 984, 169 S.W.2d 407; Burdette v. Settle, 8 Cir., 296 F.2d 687.

In all this background the appellant's principal contention in this 27.25–27.26 proceeding is that his pleas of guilty were not "understandingly and voluntarily made" for the reasons that the trial court did not determine whether the pleas were voluntary and whether the appellant understood either the charges or the consequences of his pleas. He does not complain that he had incompetent representation, he does not imply if not charge, however, that he was improperly induced by his lawyer to plead guilty and that his pleas were made in fear of the infliction of the death penalty. These and other matters are urged in great detail but it is not necessary to encumber the reports with the details, the appellant urges that the circumstances of this record bring his case within State v. Blaylock, Mo., 394 S.W.2d 364, in which employed counsel failed to appear, and State v. Williams, Mo., 361 S.W.2d 772, in which defendant and perhaps his lawyer were under a "misapprehension" if not misled by the turn of events, and State v. Sayre, Mo., 420 S.W.2d 303 in which there was no lawyer, the plea may have been equivocal and, finally in which there was no evidentiary hearing. All the missing, determinative factors in those cases are present here.

■ In the first place, the circumstance in this case that at the end of five days of trial for murder the pleas of not guilty in all three cases were withdrawn and pleas of guilty entered may be sufficient in and of itself to refute all of the appellant's present allegations and claims. Insofar as the pleas of guilty may have been entered to avoid the death penalty, a distinct possibility here, that reason "does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage." North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. But all other considerations aside, while the appellant in person sought to establish his lack of understanding and the trial court's shortcomings Mr. Bruntrager while preserving the integrity of the client-lawyer relationship testified that he made a thorough investigation before entering upon the five-day trial, that he explained the nature of the charges to Bradley and to his mother, who had hired him, as well as the range of punishment. The only possibility of a defense, made to appear only in this proceeding, was that Patrolman Mulrooney lingered for nine days and the defendant hoped to establish that the cause of death was pneumonia and not the shotgun blast into his chest, at best a matter of dubious consequence. As to this Mr. Bruntrager said: "It was a possible cause, but any doctor I had ever asked in the course of this investigation had indicated to me, while it could have caused it, in their opinion it didn't cause it in this case." Mr. Bruntrager said that he explained the difference in concurrent and consecutive sentences and he told Bradley "that I would make every effort to ask the court to make them concurrent." But he explained to Judge Nangle (the appellant had disqualified Judge Scott): "Well, there was much conversation because Judge Scott, as Mr. Bradley will remember, would not agree to even consider a life sentence until he had heard further evidence in the case." In addition, these pleas were not entered and consummated on the day it was decided that the pleas of not guilty should be withdrawn: "—this took place over a period of two days, the talk about the pleas. It didn't all take place on the

same day," after reporting on negotiations, in most of which appellant was present "but took place one day when he said, 'See what you can do,' and in the discussions with the court, that was a lengthy process, and discussion with him and his mother, and overnight, and it was the next day sometime before it was actually entered." And in this connection he testified that he did not tell Bradley that if he entered a plea of guilty and received a life sentence that he would be released in a certain number of years, as Bradley now claims; "That was not within my power and I did not tell him that," and, at the same time, he did not tell him that "if he didn't plead guilty he would probably get a death sentence and this would kill his mother." The fact of three distinct felonies, all carrying a life sentence, repels in itself the appellant's asserted claim that he expected but one life sentence—under his theory no punishment would be assessed for two other admitted felonies. Daniels v. State, Mo., 454 S.W.2d 17.

As indicated the trial court made findings of fact, all contrary to the appellant's allegations—the court found that the pleas of guilty were voluntarily and knowingly made and that the sentences were appropriate to the facts. Factually no precisely similar instances have been cited or found, however, the court's findings are evidentially supported and persuasive if not controlling cases on all issues are North Carolina v. Alford, supra; Vaughn v. State, Mo., 443 S.W.2d 632; Daniels v. State, supra; State v. Harris, Mo., 382 S.W.2d 642; Turley v. State, Mo., 439 S.W.2d 521; State v. Turley, 443 F.2d 1313 (May 18, 1971) and Drew v. State, Mo., 436 S.W.2d 727. Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.