# FRANKLIN B. DARBY v. STATE OF MARYLAND

[No. 112, September Term, 1980.]

*Decided October 16, 1980.*

The cause was argued before MASON, LISS and MACDANIEL, JJ.

Submitted on brief by *Alan H. Murrell, Public Defender,* and *Nancy L. Cook, Assistant Public Defender,* for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and

*R. David Fordham, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MacDANIEL, J., delivered the opinion of the Court.

In September 1979, appellant Franklin Darby was indicted for escape from the Maryland House of Correction. He was tried before a jury in the Circuit Court for Anne Arundel County on January 7, 1980, and found guilty. A five-year sentence was imposed.

In this appeal appellant presents two questions:

    (1) Was he denied his right to have process for his witnesses?

    (2) Was his base file erroneously admitted into evidence?

Finding merit in neither of these allegations of error, we shall affirm appellant's conviction.

Appellant was charged with having escaped from the Maryland House of Correction on or about August 22, 1979. Appellant requested that writs of *habeas corpus ad testificandum* be issued for twenty-six of his fellow inmates. Five days prior to trial the court held a hearing to consider appellant's request.

Appellant's counsel advised the court that appellant's defense was going to be "along the lines of *Robinson v. State,* that there was certain self help in the escape." [1] When asked to proffer the witnesses' testimony, appellant asserted that

---

**1.** In Robinson v. State, 42 Md. App. 617 (1979) this Court recognized a limited defense of necessity to a charge of escape, provided that all the following conditions were established:

    "(1) The prisoner is faced with a *specific threat* of death, forcible sexual attack or substantial bodily injury in the *immediate future;*

    (2) *There is no time for a complaint* to the authorities or *there exists a history of futile complaints* which makes any result from such complaints illusory;

    (3) *There is no time or opportunity to resort to the courts;*

    (4) There is no evidence of force or violence used towards the prison personnel or other 'innocent' persons in the escape; and

    (5) The prisoner *immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.*" (Emphasis added.) 42 Md. App. at 621.

they would testify that "the whole thing is a threat, the whole Maryland House of Correction." Specifically, he asserted that they would testify that on July 4, 1979, a correctional officer threatened to "beat [appellant's] head in." Appellant explained that although not all twenty-six inmates were present at the time of the alleged threat, nevertheless they "knew all about it."

The trial court expressed concern that summonsing twenty-six inmates "would place a burden on the security of the courthouse." The court also found that, as a matter of law, the witnesses' testimony was not relevant to appellant's necessity or duress defense. In view of the fact that seven weeks had elapsed between the date of the threat and the date of appellant's escape, the court ruled that there had been more than sufficient time for him to first make a complaint and resort to the courts. Declining to issue the requested writs, the trial court stated:

> ". . . this is just to summons in twenty-six inmates to attempt to try the system, and if he's permitted to pull in twenty-six inmates to testify to absolutely nothing relevant about the case, then there's no reason why he can't issue a writ for every inmate in the state of Maryland. It's just merely an attempt to destroy the system which I will not be part to. Motions's denied."

Defense counsel then noted his objection:

> "I don't know as there's any law that we can discover that says that he cannot have any person subpoenaed in his behalf. I think he has a constitutional right to that, irrespective of what they have to say and I would so mention that to the Court."

Appellant here renews the objections to the court's ruling which he made at trial. He asserts that the United States Constitution, the Maryland Declaration of Rights and the Maryland Rules of Procedure expressly grant an accused in a criminal case the right to have witnesses testify on his

4

behalf, and to secure the attendance of witnesses through compulsory process; and that they impose upon the court the duty to summons *any* witness whose presence is requested.

The Sixth Amendment to the Constitution of the United States provides, in part:

"In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

Article 21 of the Maryland Declaration of Rights states:

"That in all criminal prosecutions, every man hath a right ... to have process for his witnesses; ..."

And Maryland Rules of Procedure 742, § b, provides in part:

"Upon the request of a party filed at least nine days before trial ... the clerk shall issue a summons commanding a witness to appear to testify at a hearing or trial. ..."

To restate his argument, appellant asserts that the Sixth Amendment, Article 21 of the Declaration of Rights and Maryland Rule 742 b. confer upon him an absolute right to compulsory process. That is to say, he asserts that they confer a right which is not, nor may be, conditioned upon his ability to demonstrate the necessity for the witness' presence, or the relevance or materiality of his testimony. Appellant suggests that the Court of Appeals' decisions in *Blount v. Wright,* 189 Md. 294 (1947) and *Edmondson v. Brady,* 188 Md. 96 (1947), and our decision in *Van Meter v. State,* 30 Md. App. 406 (1976), are authority for his proposition. They are not. *Edmondson* and *Blount* stand merely for the proposition that although the Declaration of Rights assures a defendant process for his witnesses (*ceteris paribus*) it does not guarantee the attendance of witnesses. *Edmondson,* at 102; *Blount,* at 296-97. As for *Van Meter,* we fail to see how it furthers the discourse in any way whatever.

Although we have carefully reviewed the decisions of this Court and the Court of Appeals, we are aware of no Maryland case addressing the precise question presented here.

We turn first to consider appellant's constitutional challenge to the trial court's ruling.[2] We think it is well established in other jurisdictions that the Sixth Amendment right to compulsory process is fundamental but not absolute. State and Federal courts have held that the right is assertable only where the witnesses to be called will offer competent and material testimony. Thus, for example, in *Commonwealth v. Jackson,* 324 A.2d 350 (Pa. 1974), the Supreme Court of Pennsylvania stated, at 354-55:

"Article I, section 9, of the Pennsylvania Constitution guarantees an accused the right 'to have compulsory process for obtaining witnesses in his favor. . . .' A similar provision is contained in the United States Constitution. U.S.Const. Amend. VI. *See also* Act of May 31, 1718, 1 Sm.L. 105, § 4, 19 P.S. § 783. The right to compulsory process encompasses the right to meet the prosecution's case with the aid of witnesses, and the right to elicit the aid of the Commonwealth in securing those witnesses at trial, both of which are fundamental to a fair trial. This constitutional right, though fundamental, is not, however, absolute. Evidentiary rules based on legitimate state interests which exclude certain witnesses or certain testimony are not inconsistent nor incompatible with the right to compulsory process. Accordingly, where certain witnesses' testimony would not be admissible at trial, the Constitution does not require that a defendant be given the right to secure the attendance of witnesses which he has no right to use. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Our inquiry is thus directed to the question of the admissibility of the testimony which

2. Our disposition of appellant's Sixth Amendment challenge shall apply equally to appellant's Declaration of Rights argument.

would have been given by the two witnesses whom appellant requested to be subpoenaed." (Footnote omitted.)

The Court held that the trial court did not err in denying subpoenas for the witnesses since the proffered testimony was irrelevant.

And in *State v. Ahearn,* 403 A.2d 696 (Vt. 1979), the Supreme Court of Vermont held:

> "A trial court is not required to issue compulsory process for anyone whom an accused may designate as a witness.... Compulsory process is only required where the witnesses to be called will offer competent and material testimony.... The burden is on the defendant to show that competency and materiality.... The trial court has wide discretion to determine which witnesses requested by an indigent defendant should be subpoenaed at government expense, and its decision will not be disturbed except in cases of clear abuse."

(Citations omitted.) 403 A.2d at 704.

And finally, in *Davis v. United States,* 390 A.2d 976 (D.C. 1978), the District of Columbia Court of Appeals held that the defendant was not denied his Sixth Amendment right to compulsory process when the trial court quashed his subpoenas; the trial court had ruled that the defendant had not made a clear showing that the witnesses' testimony was necessary to prevent prejudice and injustice. The Appellate court stated, at 390 A.2d 980-81:

> "Finally, appellant contends that he was denied his Sixth Amendment right to compulsory process when the trial court quashed three subpoenas which had been served by Mr. Davis on the Attorney General of the United States, the Acting Chief of the Metropolitan Police Department, and the Director of the Maryland Lottery. Appellant wanted these individuals to testify as to the operation of lotteries in general, the extent of their

existence in the District of Columbia, and the efforts of the government to regulate them. It is apparent that appellant intended to use this testimony to support his claim of selective enforcement.

The right of an accused to have compulsory process for obtaining witnesses in his favor is undisputed; nevertheless, there are limitations on that right. The Supreme Court delineated those limitations in holding that an accused was denied his right to compulsory process where the 'State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense.' *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967) (footnote omitted). Here, appellant can show neither (1) that the witnesses could testify as to events of which they had personal knowledge, or (2) that their testimony was relevant and material to the defense."

*Accord, United States v. Linn,* 460 F.2d 1274 (10 Cir. 1972); *United States v. Beasley,* 479 F.2d 1124 (5 Cir. 1973).

Upon the weight of this authority, therefore, we hold that appellant's Sixth Amendment right to compulsory process was not infringed in this case. It was clear from appellant's proffer that none of the twenty-six witnesses' testimony would be relevant to the issues sought to be raised in appellant's defense. Furthermore, it was also apparent that a substantial part of that testimony would be inadmissible hearsay in any event.

Appellant also contends that the trial court's decision violated Maryland Rule 742. Appellant asserts that, "unlike, for example, Federal Rule 17 (b) [3], the Maryland Rule does

---

**3.** Federal Rule of Criminal Procedure 17 (b) provides:

"(b) DEFENDANTS UNABLE TO PAY. The court shall order at any time that a subpoena be issued for service on a named

not require any showing of necessity before the right to process attaches;" that "the rule is formed in mandatory terms," and that it "is not meant to serve merely as a guideline, but is to be strictly complied with."

In our view, these assertions do little more than beg the question here. We note, for example, that the Sixth Amendment's guarantee of compulsory process, which we construed earlier, is couched in terms equally as "mandatory" as those of the rule. It is true, as appellant points out, that the rule does not specifically refer to a standard of relevance or materiality. It makes no reference to competency, either. Yet we hardly think a party could insist upon the right to subpoena witnesses known both to the court and counsel to be incompetent to testify under any circumstances. However, appellant's interpretation of the rule, if permitted to prevail in this case, would accomplish the same result.

This Court and the Court of Appeals have often said that the Maryland Rules of Procedure are "precise rubrics" which are to be read and followed. *Williams v. State,* 22 Md. App. 714 (1974); *Brown v. Fraley,* 222 Md. 480 (1960). But it must also be remembered that the Maryland Rules were, after all, established to promote — not to impede — the orderly and efficient administration of justice. *Robinson v. Bd. of County Comm'rs,* 262 Md. 342 (1971).

As we construe the rule, the trial court's actions in this case were perfectly justified. In view of appellant's proffer of testimony the trial court concluded, rightly in our view, that the testimony sought to be elicited was irrelevant to the issues being raised in appellant's defense, and further, that a significant portion of the testimony would be inadmissible hearsay under any circumstances. That being the case, we think the issuance of twenty-six writs of *habeas corpus ad*

---

witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government."

*testificandum* would have served no useful purpose, but instead would only have wasted the resources of the State. Nothing in the rule required this result. We find no error in the trial court's decision on this issue.

Appellant next contends that the trial court erroneously admitted into evidence three exhibits from his base file. He asserts that the State failed to establish a proper foundation for the base file prior to moving its admission under the business records exception to the hearsay rule, § 10-101 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland. Specifically, he asserts that, aside from offering evidence that "the base file was obtained from the record room at the Maryland Correction Institution," the State offered no proof that it was kept in the regular course of business; nor did their custodian testify to his familiarity with the records, the record-keeping process or the trustworthiness of the records.

We think the answer to appellant's challenge is contained in our opinion in *Watkins v. State,* 42 Md. App. 349 (1979), at 355-56:

> "Appellant . . . raises one other issue: whether a testimonial foundation must be established before a commitment record of an inmate may be admitted into evidence under the business record exception to the hearsay rule. In Maryland, before a document is admissible into evidence to prove an act, transaction or event under the business record exception to the hearsay rule, Code (1974, 1978 Cum. Supp.) Cts. and Jud. Pro. Art. sec. 10-101, there must be a showing that when the record was made, it was made in the regular course of business as a memorandum or record of that act, transaction or occurrence.
>
> We said in *Thomas v. Owens,* 28 Md. App. 442, 448, 346 A.2d 662 (1975): 'While normally this foundation is shown by testimonial evidence, the statute [Cts. Art. sec. 10-101, *supra*] sets forth no such requirement. At times a court may properly

conclude from the circumstances and the nature of the document involved that the proffered document was made in the regular course of business.' *Levine v. Beebe,* 238 Md. 365, 370, 209 A.2d 67 (1965); Tellez v. Canton Railroad Co., 212 Md. 423, 432, 129 A.2d 809 (1957); *Morrow v. State,* 190 Md. 559, 59 A.2d 325 (1948); *Gordon v. State,* 14 Md. App. 245, 257, 286 A.2d 833, 841 (1972).

Furthermore, the rule in Maryland is that business records may be introduced, even though hearsay in nature, 'when the entry meets the test of "necessity and circumstantial guaranty of trustworthiness." ' *Burroughs International Co. v. Datronics Engineers, Inc.,* 254 Md. 327, 348, 255 A.2d 341 (1969).

In the present case, the commitment record was introduced into evidence to show that the appellant was legally detained and confined as required by the elements of the offense of common law escape. The fact that the Department of Correction maintains a base file on every prisoner which includes among other documents a commitment document indicates that the record was made in the regular course of business."

*Judgment affirmed.*
*Appellant to pay the costs.*