**Stephan Augustus OWENS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1180S418.

Supreme Court of Indiana.

Nov. 5, 1981.

R. Davy Eaglesfield, III, Mishkin, Eaglesfield, Darst & Grossman, Indianapolis, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

PRENTICE, Justice.

Defendant (Appellant) after trial by jury was convicted of three counts of Armed Robbery, Ind.Code § 35–42–5–1 (Burns 1979) and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979) and was sentenced to a total of seventy (70) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in denying Defendant's motion to compel the attendance at trial of his wife, who was incarcerated.

(2) Whether there was probable cause to arrest Defendant without a warrant.

(3) Whether the trial court erred in admitting Defendant's confession into evidence.

(4) Whether Defendant was subjected to an involuntary line-up.

(5) Whether the trial court erred in failing to grant a new trial based on newly discovered evidence.

(6) Whether the trial court erred in admitting evidence of a pre-trial identification procedure.

(7) Whether the trial court properly sentenced Defendant.

(8) Whether the trial court correctly followed the Habitual Offender Statute.

1. The statute has been repealed effective September 1, 1982.

The evidence most favorable to the State reveals that on July 29, 1979, Defendant, armed with a rifle, entered the Sheraton East Hotel in Indianapolis. He announced a hold-up and took money from the hotel cash drawer and personal property from an employee, the employee's husband, and a guest. Defendant then fled in a Green Chevrolet. One of the victims remembered the license plate number, which was traced to the getaway vehicle.

\*    \*    \*

## ISSUE I

■ Prior to trial, Defendant filed a motion which requested the trial court to order the Department of Correction to produce his wife, Denise Owens, on the day of trial. Ind.Code § 35–1–33–1 (Burns 1979).[1] Mrs. Owens was incarcerated at the Correctional Facility at Westville.

Our research discloses that we have not previously determined the standard applicable in ruling upon a motion to produce a witness, who is incarcerated in a penal institution. Other courts that have dealt with this subject require the defendant to show that the testimony of the incarcerated witness is material to the case. *Clark v. State,* (1967) 280 Ala. 493, 497, 195 So.2d 786, 789, *cert. denied,* (1967) 387 U.S. 571, 87 S.Ct. 2071, 18 L.Ed.2d 967; *Darby v. State,* (1980) 47 Md.App. 1, 421 A.2d 108; *People v. Shillings,* (1967) 6 Mich.App. 420, 428–29, 149 N.W.2d 231, 235; *Bradley v. State,* (1972) Mo., 476 S.W.2d 499, 500–01; *State v. Gann,* (1969) 254 Or. 549, 566, 463 P.2d 570, 578; *Commonwealth v. Jackson,* (1974) 457 Pa. 237, 244, 324 A.2d 350, 355; *State v. Ahearn,* (1979) 137 Vt. 253, 265, 403 A.2d 696, 704. We adopt this standard.

At the hearing on the motion, Defendant made no offer of what Mrs. Owens' testimony would be. The trial court ruled as follows:

"This motion is overruled. Make a minute of this Motion for the attendance of Denise Owens is overruled as it pertains to the trial. It is not a final adjudication."

Defendant contends that Mrs. Owens was necessary as a rebuttal witness upon the issue of the ownership of the vehicle, which a witness identified as the getaway car. This point was not brought to the trial court's attention in the motion or at the hearing upon the motion.

After the State rested its case the following occurred:

"*Court:* Do you have a Motion you wish to make?

"*Mr. Eaglesfield:* I don't believe so.

"*Court:* If you did I wanted you to make it now so we could get it over with it. You got ten minutes."

We do not know to what issues this exchange refers; however, defense counsel might have but did not assert the relevance of the anticipated testimony of Mrs. Owens, as a rebuttal witness at that time but only stated that he had only two witnesses. Thereafter, at the habitual offender phase of the proceedings, Defendant again failed to renew his motion to produce Mrs. Owens. Subsequently she did testify at the sentencing hearing.

The record shows that Defendant never apprised the trial court of the materiality of Denise Owens' testimony. Under these circumstances the trial court committed no error.

## ISSUE II

One Detective Combs arrested Defendant on July 30, 1979, without a warrant, at the Marion County Jail. He took Defendant to police headquarters where Defendant made inculpatory statements and was identified in a line-up by one of the robbery victims.

Defendant contends that there was no probable cause for his arrest, and therefore, that the trial court should have suppressed his statements and evidence of the line-up. Detective Combs relied upon a police report of the Robbery prepared by Officer Shue, who investigated the incident. That report is not contained in the record; however, Officer Shue's testimony reveals that he investigated the license plate number, talked to the witnesses, and discussed the

case with other "Police Agencies" before listing a suspect, "Augustus Owens," on the report.

On the morning after the robbery at approximately 6:30 a. m. Officer Shue learned that the vehicle, which was used in the robbery, had been located across the street from "Mr. Owens" address. Officer Shue traced the vehicle identification number to learn that:

"A. It was registered to a Stephan Owens, and a lady, but I don't remember her name; I believe it was his wife."

Officer Shue admitted that the license plate number obtained from one of the victims was not registered to "Owens." Thereafter, the officer was shown some sort of card, which had been marked Defendant's Exhibit A. Officer Shue read the card and stated that the car was registered to "Jerry or Denise Owens." The card was not admitted into evidence.

Defendant contends that he has shown that the vehicle in question was registered to a Jerry Owens and therefore, that Officer Combs' arrest had been based upon erroneous information and lacked probable cause.

■ The existence of probable cause to arrest is determined upon the basis of the collective information known to the law enforcement organization. *Benton v. State,* (1980) Ind., 401 N.E.2d 697, 699. If the arresting officer obtains the name of a suspect from a fellow officer, the State must show that the fellow officer relied upon information which would give rise to probable cause. *Whiteley v. Warden,* (1971) 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313.

■ The record shows that when Detective Combs arrested the defendant, he arrested Jerry Owens. By way of an exhibit attached to his motion to correct errors, Defendant admits that he is Jerry Owens. The exhibit points to police records, which show that the defendant had used the alias, Gerald Owens. Officer Shue testified:

"Q. During the course of your investigation did you have occasion to communicate with other Police Agencies?

"A. Yes, I did.

"Q. Further as a result of your investigation, talking with the witnesses, and your conversations with other Police Agencies, did you determine a suspect for this offense?

"A. Yes, I did."

Defendant's contention is without merit. His arrest was based upon probable cause. *Johns v. State*, (1956) 235 Ind. 464, 466, 134 N.E.2d 552, 553.

### ISSUE III

Defendant further contends that the statements which he had made to Detective Combs were not voluntary.

■ It is the State's burden to prove, beyond a reasonable doubt, that the defendant voluntarily and intelligently waived his rights, and that the defendant's confession was voluntarily given. In considering whether such burden was satisfied we look at the totality of the circumstances, to determine whether there had been any inducement by way of violence, threats, promises or other improper influence. However, in reviewing the trial court's ruling upon the issue, we will consider only the evidence which supports that ruling, when the evidence is in conflict, as well as any unrefuted evidence in the defendant's favor. *Jackson v. State*, (1980) Ind., 411 N.E.2d 609, 610–11.

■ Prior to trial Defendant filed a motion to suppress his statements. The testimony adduced at the hearing conflicted. Defendant testified that he was intoxicated. Two bail bondsmen, who were present at the arrest, testified that they thought that Defendant was either drunk or high, as did one of the participants in the line-up. Combs testified that Defendant's behavior was real good and that he had signed a waiver of rights form before stating, "What can I say, Combs, you know, you got me, I done it." Defendant's speech was not slurred, and he did not appear to be intoxicated. We cannot re-determine the credibility of these witnesses.

At trial Combs related a similar account of the arrest and confession; however, defense counsel's questioning treated facts, which had not been discussed at the hearing on the motion to suppress. Combs stated that when he brought Defendant from the Marion County Jail to the detective's office at the Indianapolis Police Department Headquarters, officers of the Lawrence Police Department spoke with Defendant for forty-five minutes to an hour about an unrelated incident. Then Combs informed Defendant of his rights and Defendant signed the waiver form and made his confession. Combs also testified that the Lawrence police did make some promises to Defendant about the unrelated matter; however, the witness was never asked to relate those promises. Combs further testified that he had made no promises and that the Lawrence police had made no promises with respect to the case at bar. In response to this testimony defense counsel made the following objection:

"*Mr. Eaglesfield:* Your Honor, we would still object to anything, stated by Mr. Owens, there is evidence there were promises to him, there was also evidence that there was shooting, that he was apprehensive at the time of this statement.

*Court:* Well, on the basis of record as it stands now, your objection is overruled."

In effect, Defendant asks us to impute the improper conduct of the Lawrence Police, which concerns an unrelated matter, to Detective Combs. The record, however, does not disclose that the conduct was improper. For all that we know, the Lawrence police officers were authorized to engage in plea negotiations concerning the unrelated incident.

With respect to the case at bar, the record unequivocally shows that the trial court could find that the police engaged in no improper conduct. The trial court's ruling was not erroneous.

## ISSUE IV

█ Defendant also contends that the line-up was not voluntary. He apparently asserts that he was made to stand in the line-up against his will, because Detective Combs stated that if Defendant "beat" the line-up, he would be released.

█ Our decisions reveal that we have upheld pre-trial identification procedures where the defendant was not aware that a witness observed him, *Zion v. State*, (1977) 266 Ind. 563, 365 N.E.2d 766, and where the suspect was apprehended shortly after the incident and was returned to the scene. *Edwards v. State*, (1976) 265 Ind. 239, 352 N.E.2d 730. And "(w)e have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance." *United States v. Wade*, (1967) 388 U.S. 218, 222, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149, 1154. Thus, the police may conduct a line-up without the cooperation of the defendant, and Defendant's contention is without merit.

## ISSUE V

Defendant raises a claim of newly discovered evidence with respect to the vehicle used in the robbery:

"Subsequent to trial, the defendant has obtained the certification of records of said vehicle which show beyond a reasonable doubt that the vehicle has never been titled to the defendant. The defendant contends that he could not with reasonable diligence have discovered and produced this evidence at trial because he was prejudiced by surprise and could not have foreseen or prevented the inaccurate testimony of Officer Shue."

We have treated this matter at length in Issue II.

## ISSUE VI

█ Defendant contends that two weeks before trial, two of the State's witnesses, Gary and Jan Snow, were shown photographs of the aforementioned line-up. He asserts that he was denied his Sixth Amendment right to counsel, because the State did not disclose the event.

At trial Gary Snow related the events of the robbery. He identified Defendant without objection and testified that he had not attended the line-up.

On cross examination defense counsel elicited testimony concerning Snow's having viewed photographs of the line-up prior to trial. Thereafter, defense counsel raised no objections and made no motion to strike Snow's testimony. The same scenario followed with respect to the testimony of Jan Snow, during which the State, without objection, was allowed to display one of the photographs to the jury.

Upon this state of the record we perceive that Defendant asks us to exclude evidence which he brought into the trial. Such a position is not tenable.

█ In his Motion to Correct Errors Defendant raised the following error:

"3. The Defendant contends that the prosecution used unduly suggestive methods involving Jan and Gary Snow in an identification process prior to trial that were violative of the Sixth Amendment."

Defendant made no in-trial objections and no motions which addressed this asserted error. Failure to make a timely objection to the admission of evidence at trial renders any asserted error with respect to the admission of that evidence unavailable for review. *Stubblefield v. State*, (1979) Ind., 386 N.E.2d 665, 667.

## ISSUE VII

The trial court enhanced the sentence on one count of Armed Robbery by ten years for aggravating circumstances. It cited Defendant's threat to kill Gary Snow. After the robbery was completed, Defendant fled from the hotel lobby through the front door and the following occurred:

"Q. What happened when the person started to go outside?

"A. He told us to stand still, I believe, after he went out the door I went

out the front door to see which direction he went, or what, you know, what mode of travel he had. He got into a green Chevrolet Monte Carlo, before he got into it he said, 'I mean it, I'll shoot you.'

"Q. Who was he saying that to?

"A. To me, (Gary Snow) 'cause I had come in the doorway, you know, of the motel, you know, to go out."

Defendant contends that this threat was part of the element of the putting in fear or threatening the use of force required by Ind.Code § 35–42–5–1 (Burns 1979).

When considering whether or not to enhance a sentence under Ind.Code § 35–4.1–4–7(c) and (d) (35–50–1A–7(c) and (d) (Burns 1979), the trial court may consider the nature and circumstances of the crime and conduct which supports the elements of the offense charged. *Warfield v. State,* (1981) Ind., 417 N.E.2d 304, 309. In this case the trial court properly considered a circumstance, threats against the victim, which occurred after the robberies charged were complete. *Warfield v. State, supra; McCawley v. State,* (1980) Ind., 409 N.E.2d 594. *See Gibson v. State,* (1981) Ind., 417 N.E.2d 1111, 1113.

Defendant also complains that the trial court imposed consecutive sentences for the same reasons which support the habitual offender charge. The trial court's order reads as follows:

"3. The court finds that reformation is so remote that the court must act to protect society for as extended a period as the law allows. Therefore the court orders that the sentences upon Counts I, II, and III each be served consecutively."

We believe that this conclusion rests upon the trial court's finding that Defendant had accumulated some twenty-eight (28) felony convictions at the time of the sentencing hearing. The trial court also found that Defendant had not shown remorse and consistently had acted as if his wrongdoings were the fault of someone else. Upon this record we cannot say that the trial court's sentence was unreasonable. Ind.R.App.

Rev.Sen. 2(1). The trial court considered far more information than that which had come to light as a result of the habitual offender charge.

## ISSUE VIII

Defendant complains of the trial court's refusal to allow him to present sentencing information to the jury during the habitual offender proceeding. He reasons that under Ind.Code § 35–50–2–8(d) (Burns 1979) the use of the word "may" gave the jury a discretionary function in sentencing:

"The jury (if the hearing is by jury), or the court (if the hearing is to the court alone), *may* find that the person is an habitual offender only if the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions."

The amended version of Ind.Code § 35–50–2–8(d) (Burns Supp. 1981) reads as follows:

"A person is an habitual offender if the jury (if the hearing is by jury), or the court (if the hearing is to the court alone), finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions."

In the context of habitual offender proceedings, the jury serves no sentencing function. It merely determines, based upon the evidence adduced, whether or not the defendant is an habitual offender as that term is defined by statute. Like any other jury it has the discretion to disbelieve or discredit any or all of the State's evidence, no matter how unimpeachable it may be. *Hicks v. State,* (1981) Ind., 426 N.E.2d 411. However, any evidence, which Defendant seeks to introduce in the habitual offender proceeding, must be relevant to the matters at issue. Thus, Defendant was not entitled to present the jury with a presentence investigation report. The trial court did not err in refusing his tendered instructions, which would have informed the jury that if they found him guilty, they would be sentencing him to an additional

thirty (30) years, that the penal code is founded upon principles of reformation, and that all penalties should be proportionate to the offense. Further, we also find the testimony of witnesses concerning the defendant's contributions to the community and the testimony of two police officers concerning whether or not Defendant is an habitual offender to be wholly irrelevant to the issues which the jury was to determine under Ind.Code § 35–50–2–8 (Burns 1979).

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.