Gwendolyn TUCKER, Plaintiff,

v.

Ronald FIRKS and Len
Hutson, Defendants.

Civ. No. F 88–295.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 29, 1989.

Thomas D. Decker, Thomas D. Decker &
Associates, Chicago, Ill., for plaintiff.

Phillip A. Renz, Miller, Carson & Boxber-
ger, J. Timothy McCaulay, Helmke, Beams,
Boyer & Wagner, Fort Wayne, Ind., for
defendants.

ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defen-
dants' motion for summary judgment. The
parties have fully briefed the issues. For
the following reasons, the motion for sum-
mary judgment will be denied.

This cause arises out of the arrest of the
plaintiff, Gwendolyn Tucker, for felony
theft on October 8, 1986. The charges
were subsequently dismissed because the
only eyewitness refused to testify. Shortly
thereafter, Tucker brought suit against Of-
ficers Ronald Firks and Len Hutson of the
Fort Wayne Police Department, alleging
that the officers arrested her without prob-
able cause to believe she had committed a
crime. Tucker is seeking compensatory
and punitive damages under 42 U.S.C.
§ 1983 for violation of her Fourth and
Fourteenth Amendment rights.

In response, the defendants claim that
qualified immunity shields them from liabil-
ity for civil damages. As the defendants
have noted, the Supreme Court has recog-
nized that state officials are entitled to
qualified immunity if their conduct "does
not violate clearly established statutory or
constitutional rights of which a reasonable
person would have known." *Harlow v.
Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.
2727, 2738, 73 L.Ed.2d 396 (1982). This
qualified immunity is available to police
officers acting in their official capacities.
*Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213,
18 L.Ed.2d 288 (1967).

The issue of qualified immunity is
a question of law for the court. *Mitchell v.
Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806,
2816–17, 86 L.Ed.2d 411 (1985). Further-
more, the test for determining qualified
immunity is an objective one. *Id.* 457 U.S.
at 819, 102 S.Ct. at 2738–39. If, under the
*Harlow* objective standard, a reasonable
police officer could have believed that there
was probable cause to arrest Tucker, then
the defendants would be entitled to quali-
fied immunity which would support a grant
of summary judgment in their favor.
*Anderson v. Creighton*, 483 U.S. 635, 107
S.Ct. 3034, 97 L.Ed.2d 523 (1987). This

court, however, finds that the defendants are not entitled to qualified immunity.

In any case, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 106 S.Ct. at 2512.

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex*, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 106 S.Ct. at 2511.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S.Ct. at 2512. This court, however, takes note of the fact that § 1983 claims presenting the question of probable cause are generally inappropriate for disposition on summary judgment. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989).

With the qualified immunity and summary judgment review standards set forth, this court now turns to the resolution of the central issue in this case, whether a reasonable police officer could have believed he had probable cause to arrest Tucker for felony theft.

The term "probable cause" is not susceptible to a precise definition. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Probable cause exists where the "facts and circumstances [are] 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Generally speaking, its existence "depends upon the officer's own knowledge *and the knowledge re-*

ceived from others which is reasonably trustworthy." *United States v. Gaston,* 620 F.2d 635, 638 (7th Cir.1980) (emphasis supplied). *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). *See also United States v. Jones,* 696 F.2d 479, 485, 485 n. 6 (7th Cir.1982).

Indiana follows the definition stated above of probable cause. *Fyock v. State,* 436 N.E.2d 1089, 1093 (Ind.1982); *Battle v. State,* [275 Ind. 70], 415 N.E.2d 39 (Ind.1981); *Strosnider v. State,* 422 N.E.2d 1325 (Ind.App.1981). Further, Indiana also follows the rule that probable cause is "determined upon the basis of the collective information known to the law enforcement organization." *Brown v. State,* 442 N.E.2d 1109 (Ind. 1982). *See also Suggs v. State,* 428 N.E.2d 226 (Ind.1981); *Owens v. State,* 427 N.E.2d 880 (Ind.1981); *Benton v. State,* 273 Ind. 34, 401 N.E.2d 697 (1980).

*Roberts v. Hochstetler,* 592 F.Supp. 703, 707 (N.D.Ind.1983).

In discussing the standard for resolution of probable cause issues, the Seventh Circuit has stated

It is true that the issue of probable cause ordinarily is for the judge rather than the jury. That is because the issue usually arises in the context of a motion to suppress evidence, which the judge decides. But where the issue arises in a damage suit, it is, as the panel opinion acknowledged, a proper issue for the jury if there is room for a difference of opinion. See *[Llaguno v. Mingey],* 739 F.2d [1186] at 1190 [ (7th Cir.1984) ]; *Hindman v. City of Paris,* 746 F.2d 1063, 1067 (5th Cir.1984); *Garris v. Rowland,* 678 F.2d 1264, 1270 (5th Cir.1982); *Giordano v. Lee,* 434 F.2d 1227, 1230 (8th Cir.1970); cf. *Banish v. Locks,* 414 F.2d 638, 641 (7th Cir.1969). The underlying issue in deciding whether the police had probable cause to do what they did is reasonableness, which is also the underlying issue in deciding negligence—a classic jury issue.

Probable cause means, in fact, a reasonable basis—"more than bare suspicion, but less than virtual certainty,"

*United States v. Garza–Hernandez,* 623 F.2d 496, 499 (7th Cir.1980); see also *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 226, 13 L.Ed.2d 142 (1964); Grano, *Probable Cause and Common Sense: A Reply to the Critics of Illinois v. Gates,* 17 J.L.Reform 465, 478–512 (1984)—for believing that a search or seizure will be fruitful—will turn up evidence, or leads to evidence, or contraband, or the perpetrator of the crime.

*Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985).

When confronted with an issue of probable cause in a summary judgment motion based on qualified immunity, the court must consider all the undisputed facts in the record. *Whitt v. Smith,* 832 F.2d 451, 454 (7th Cir.1987); *Green v. Carlson,* 826 F.2d 647, 651 (7th Cir.1987). Also, the court must accept as true the non-moving party's evidence. *Anderson,* 106 S.Ct. at 2511. Upon reviewing the record in the present case, this court determines the relevant facts to be as follows.

On October 2, 1986, at approximately 2:30 p.m., Byron Buchanan entered the northwest branch of the Lincoln National Bank and proceeded directly to the office of Larry Smith, the Branch Manager. Buchanan claimed to have a bomb and a gun in a bag he carried and threatened to blow Smith's head off if he didn't follow Buchanan's instructions. Buchanan then stated that he wanted one million dollars. Mrs. Tucker, who was in the office discussing a problem with her checking account, came out of the office to collect money from the tellers. She informed the tellers that Buchanan was robbing the bank and that Mr. Smith was in danger. The tellers gave Tucker $10,000 in cash which she gave to Buchanan. After Tucker returned to the manager's office, the police were called and all the employees left the bank.

Alone with Smith and Tucker in the manager's office, Buchanan proceeded to terrorize them. Buchanan, who appeared to his hostages to be mentally unstable, immediately tied Smith up and put a bag over his head, telling him that he didn't want to see

what his face looked like when he blew his head off. Buchanan also told his hostages that he had killed over 60 people in Viet Nam and that one of the hostages would not leave the room alive. Buchanan threw money around the room, and held a cigarette lighter to Smith's shirt and to a $20 bill as if he planned to burn them. Smith was released at about 4:50 p.m. and Tucker was released approximately two hours later when Buchanan surrendered. After surrendering, Buchanan was immediately arrested, taken to the Allen County Jail, and searched. The search revealed that Buchanan had $10 on his person.

On October 3, 1986, Officer Firks received a telephone call from a bank officer. The officer told Firks that the bank was missing $1,500 to $3,000 in cash. Later, the Vice President of the bank called Firks and told him that the bank had received an anonymous tip that Tucker might have taken the money. A final audit showed the bank's loss to be $2,480.

On October 7, 1986, defendants Hutson and Firks questioned Buchanan. Buchanan initially denied any knowledge of the missing money. However, after the termination of his interview, while walking back to his cell, Buchanan admitted that he had lied to the officers. Upon further questioning, Buchanan told the officers that Tucker said she was at the bank to obtain a loan of $1,000. Buchanan then said that he had given Tucker $1,000 worth of $20 bills, which she put in a credit card wallet. He also told the officers that Tucker was alone several times and thus had the opportunity to take more money.

The defendants further questioned Buchanan and Smith about the missing money in an attempt to determine whether the money had been destroyed in the manager's office. Buchanan denied that he had burned or otherwise destroyed any of the cash. Smith also stated that he did not see Buchanan burn or destroy any of the cash. However, Tucker had not told anyone that Buchanan had actually burned any money. Tucker merely stated that Buchanan had held a cigarette lighter up to several bills as if to burn them.

In discussing the matter of the missing money, the officers noted that none of them could recall that Tucker had her credit card wallet in her hand when Buchanan released her from the bank manager's office. The officers thus came to the conclusion that Tucker secreted her wallet in her clothing before leaving the bank. Tucker, however, has made a positive claim that she did in fact carry the wallet in her hands as she left the bank.

Finally, Officer Lapp of the Fort Wayne Police Department administered a polygraph examination to Buchanan. Lapp swore in his affidavit that Buchanan was truthful in his answers during the polygraph examination which incriminated Tucker. Yet "Question 11" of the examination was: "Did you deliberately lie to the Detectives about any true facts in this matter?" Buchanan's negative answer was a patent falsehood if the balance of his answers were truthful, because he had initially denied having any knowledge of the missing money. Thus, the defendants were clearly aware that Buchanan was untruthful in one respect or the other and that the polygraph examination itself was unreliable.

On October 8, 1986, Officer Firks contacted Chief Deputy Prosecutor Michael McAlexander and explained the situation to him. Later, McAlexander and Allen County Prosecutor Stephen Sims met with Officers Hutson and Firks and Captain Dave Coleman. Hutson and Firks explained to Sims what they had learned concerning the missing cash. Sims advised the officers to proceed with the interview with Tucker which they had scheduled for that afternoon. The officers were further advised to charge Tucker with two counts of theft if she admitted taking the cash, and if she denied taking the cash, to arrest her for one count of theft.

On the afternoon of October 8, 1986, Hutson and Firks interviewed Tucker and she denied taking the money. Buchanan was brought in and he told Tucker that he had informed the police that he had given her the money. Tucker still denied the fact. At this time, Buchanan also stated

that the credit card case which Tucker had with her at the interview was the same one into which she put the money. Tucker was asked to consent to taking a polygraph test. She refused at that time because she had not yet consulted with her attorney. Tucker was then arrested for felony theft. However, on May 14, 1987, the state dismissed the charges because Buchanan, the only eyewitness to the alleged theft, refused to testify against Tucker.

"Probable cause—the area between bare suspicion and virtual certainty—describes not a point but a zone, within which the graver the crime the more latitude the police must be allowed." *Llaguno*, 763 F.2d at 1565. Obviously, when the police are stalking a suspected murderer and thereafter arrest the suspect without a warrant, the police must be allowed more leeway in their probable cause determination than when they are investigating the theft of money. "The amount of information that prudent police will collect before deciding to make a search or an arrest, and hence the amount of probable cause they will have, is a function of the gravity of the crime, and especially the danger of its imminent repetition." *Id.* at 1566.

In the present case, the police were not acting in an emergency situation. Also, there was absolutely no indication that Tucker would commit further crimes. Therefore, the police had the time to conduct a more thorough investigation, question all the people involved in the robbery, possibly focus on suspects other than Tucker, and use careful judgment in determining the reliability of the evidence they had collected. As the Supreme Court has stated, it is reasonable to require police officers to exercise their own professional judgment when making probable cause determinations in order to minimize the danger of subjecting citizens to unlawful arrests. *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986).

Given the nature of the crime the police were investigating, the discrepancy in the amount of money that was missing from the bank and the amount Buchanan stated he gave Tucker, Tucker's denial, and the reasonable inference that Buchanan was inherently unreliable in light of his bizarre behavior and the conflict inherent in the polygraph examination result, this court cannot say, as a matter of law, that the defendants are entitled to qualified immunity. In summary, looking at the facts that are not in dispute in the light most favorable to the plaintiff, and without weighing any party's evidence or the credibility of the witnesses, this court finds that the facts leave room for a difference of opinion as to whether a reasonable police officer could have found probable cause existed to arrest Tucker. Therefore, the issue is a proper one for the jury and summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is hereby DENIED.